LOUISA SCHMIDT, Respondent, *v.* CHARTER OAK LIFE INSURANCE COMPANY, Appellant.

June 6, 1876.

1. A life policy stipulated that if the assured should, without written permission from the company, visit or reside south of the thirty-sixth degree of north latitude, between the 1st day of June and the 1st day of November, the policy would become void. Under a permit for sixty days, the assured went to a point south of the thirty-sixth degree, remained there two years, and died there. During this period the quarterly premiums were paid to the local agent at St. Louis, who received them with full knowledge of the facts. *Held*, that the policy was not forfeited, and the beneficiary could recover. (GANTT, P. J., dissenting.)

2. A local agent of an insurance company, empowered to take risks and receive premiums, has a general authority to dispense with conditions in policies issued through his agency, in the absence of any limitation upon such authority, known to the other party. (GANTT, P. J., dissenting.)

APPEAL from St. Louis Circuit Court.
*Affirmed.*

*S. Knox*, for appellant, cited: Story on Ag., secs. 239, 243; Billings *v.* Morrison, 7 Cal. 171; Pittsburg R. R. Co. *v.* Gazzom, 32 Pa. St. 340; Bliss on Ins. 420, sec. 261, p. 464, sec. 296; Evans *v.* United States Life Ins. Co., 10 N. Y. 587; Bartholomew *v.* Merchants' Fire Ins. Co., 25 Iowa, 507; Plahts *v.* Merchants & Manufacturers' Ins. Co., 38 Mo. 248; Wall *v.* Home Fire Ins. Co., 36 N. Y. 157.

*Hitchcock, Lubke & Player*, for respondent, cited: Bevin *v.* Connecticut Mutual Life Ins. Co., 23 Conn. 254;

Geib v. Ins. Co., 1 Dill. 449 ; Viele v. Germania Ins. Co.,. 26 Iowa, 9 ; Ins. Co. v. Wilkinson, 13 Wall. 223, 233 ;. Baubie v. Ætna Ins. Co., 2 Dill. 158, 159 ; Thompson v. St. Louis Mutual Life Ins. Co., 52 Mo. 473 ; Bliss on Ins., sec. 307 ; Crawshaw v. Sumner, 56 Mo. 517 ; Chisholm v. National Capitol Life Ins. Co., 52 Mo. 217.

Lewis, J., delivered the opinion of the court.

Plaintiff sued upon a policy of insurance issued by defendant, upon the life of her husband, Louis Schmidt, since deceased, for the sum of $1,000, and obtained judgment in the Circuit Court, from which defendant appealed. The policy contained a stipulation declaring that, " in case the said Louis Schmidt shall, without the consent of this company previously obtained in writing, pass beyond the settled limits of the United States, * * * or shall, without such previous consent, visit those parts of the United States which lie south of the thirty-sixth degree of north latitude, between the 1st day of June and the 1st day of November, * * * then this policy shall be void, null, and of no effect." The policy was dated June 10, 1864, and the premiums were to be paid annually from that date, or quarterly on the 10th days of September, December, March, and June.

It appeared, from the testimony, that, on September 5, 1871, Schmidt obtained from Godfrey & Brother, the St. Louis agents of defendant, a written permit to visit and reside in Shreveport, Louisiana, which is situated south of the thirty-sixth parallel, for the term of sixty days thereafter; that he thereupon took up his permanent abode in Shreveport, and died there, of yellow fever, on September 18, 1873. No written consent, other than that already mentioned, was ever given by defendant, or its agents, for Schmidt's residence in territory requiring such consent by the terms of the policy. The defendant resisted plaintiff's demand on account of the alleged forfeiture thus created.

The testimony further tended to show that all the premiums were regularly paid to the St. Louis agents, including that due on September 10, 1873 ; that the agent Block, to whom the last premiums were paid, was not authorized to give permits for changes of residence ; but that he, and his prede-cessors, who were so authorized, had full knowlege, at all times, of Schmidt's residence in Shreveport, and received the premiums at each successive payment during the whole period, without objection or any claim of forfeiture.

Instructions—which need not to be here set out at length — were given or refused, by the Circuit Court, to the effect that the conduct of the agents, as above stated, if proved to the satisfaction of the jury, established a waiver, by defendant, of the condition requiring a written consent to Schmidt's continued change of residence. This proposition presents the ground upon which defendant here demands a reversal of the judgment.

The doctrine that either party to a written contract may waive, by parol, any of its conditions in his favor, is too well settled to need extended elucidation. In *Williams* v. *The Bank of the United States*, 2 Pet. 102, it is announced thus : "If a party to a contract, who is entitled to the benefit of a condition upon the performance of which his responsibility is to arise, dispenses with, or, by any act of his own, prevents the performance, the opposite party is excused from prov-ing a strict compliance with the condition." That such a dispensation or waiver may be effected by parol, and yet constitute no violation of the rule which excludes parol testi-mony to vary the terms of a written contract, is also established by the highest authority. 1 Greenl. on Ev., secs. 302, 304. Because the condition, in the case before us, requires that the consent be written, it does not follow that the waiver must also be in writing. The stipulation for the written form of consent is in itself a condition, and may, in like manner, be dispensed with by the party entitled to demand it. It remains to be inquired what acts, if any,

appearing in the testimony, have amounted to such a waiver of the condition in question as may entitle the plaintiff to recover, notwithstanding its breach. For this purpose any circumstances will be sufficient which prove that the defendant, while Schmidt continued to reside beyond the prescribed territorial boundaries, treats the contract as subsisting nevertheless, and not forfeited. If the policy had ceased to exist as a binding contract, the defendant had no right to collect any more premiums. Its receipt, of the premiums, therefore, was a declaration to the other party that, so far as its option was concerned—and that was conclusive in the premises—the contract was still in force. The law of estoppel here interposes to preclude the defendant's afterwards asserting the contrary. The waiver of condition, then, if not declared in express terms, is equally effectual, from the fact that the defendant is estopped from denying it. Upon these principles it has been uniformly held that, where the non-payment of premium on a certain day would render a policy void by its terms, the receipt of the premium by the insurer, at a subsequent date, amounted to a waiver, and continued the policy in force. *Thompson.* v. *St. Louis Mutual Life Ins. Co.*, 52 Mo. 469.

It is argued for defendant that, inasmuch as Schmidt's residence in Shreveport was an increase of the risk, the payment of an additional consideration, in the way of extra. premium, was necessary to entitle the plaintiff to the benefit of the policy. We cannot see the force of this suggestion. The defendant might well have required extra compensation for its written consent to the change of residence, if demanded. But, as a waiver implies merely a voluntary adherence to what remains of the original contract, no consideration is necessary to support it.

It is further urged that a waiver by the St. Louis agents, whose authority was limited to the soliciting of applications for insurance and the collection of premiums, could not be binding for any purpose on the defendant.

The agents were the only visible representatives of the defendants in St. Louis, where the policy was negotiated for and delivered. Under such circumstances, it is held that a party dealing with the agent has a right to presume a general authority in him, and is not to be affected by a specific limitation or exception to that authority unless this is brought to his knowledge. The general presumption is that what is known and acquiesced in by the agent is also known and assented to by the principal. The agents, in this case, knew of Schmidt's continued residence in Shreveport, and with that knowledge received the quarterly premiums as they accrued. It is presumable that these receipts were regularly transmitted to the defendant in Connecticut. If the defendant did not know the circumstances under which the payments were made, this resulted from dereliction of the agents appointed by itself, and was not the fault of the other party.

In *Wing* v. *Harvey*, 2 Big. Life Ins. Cas. 365, the life policy was subject to a condition making it void if the assured went beyond the limits of Europe, without license. The local agents, through whom the insurance had been effected, were informed that the assured resided, without license, in Canada, and they yet continued to receive the premiums. It was held that this precluded the company from insisting on the forfeiture. Said Lord Justice Turner: " The office undoubtedly received the money from their agents, to whom it had been paid upon express terms and conditions, and, the office having held out Mr. Lockwood and Mr. Thompson to the world as their agents for the purpose of receiving the premiums, I think it became the duty of Mr. Lockwood and Mr. Thompson, and not that of the plaintiff, to communicate to the head office at Norwich the circumstances under which these premiums had been paid to and received by them, and the representations which were made on the occasions of such payments and receipts. Upon these grounds my opinion is that these policies must

be considered to have been continuing policies, and that this claim must, therefore, be allowed.''

In *Buckbee* v. *United States Insurance and Trust Company*, 18 Barb. 541, it was held that the renewal of a life policy (which had expired by non-payment of premium) in favor of one who at the time was sick, and so known to the officer renewing the policy, was a waiver of conditions against ill-health of the assured, which otherwise would have avoided the policy.

In *Peoria Fire and Marine Insurance Company* v. *Hall*, 12 Mich. 213, a suit on a fire policy, the knowledge of the agent, when the policy was issued, that gunpowder was kept on the premises insured, was held to be a waiver of a condition prohibiting the keeping of it without written permission. In the case of *Viele* v. *Germania Insurance Company*, 26 Iowa, 9, the principles here involved are ably and exhaustively discussed in their application to both fire and life policies. It is there held that ''any acts, declarations, or course of dealing by the insurer, with knowledge of the facts constituting a breach of a condition in the policy, recognizing and treating the policy as still in force, and leading the assured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, and estop the company from setting up the same as a defense, when sued for a subsequent loss.'' It is further held that such a waiver need not be in writing, and need not be founded on any new consideration. As to the power of a local agent of a foreign insurance company, clothed with the customary authority given to such agents, touching policies issued at their agencies, it is held that he has power to dispense with conditions and waive forfeitures arising from a breach thereof, in the absence of any limitation upon his authority known to the assured; that such powers are ''necessary incidents of the general authority of the agent to effect contracts of insurance, conduct the business at his agency, and do all things necessary and proper in the prosecution

thereof." The opinion refers to a very large number of adjudications upon the subject, and adds : " It is not to be disguised that, upon this question, there is very great conflict of authorities, some cases restricting the power of the agents to the most narrow limits of the express terms of their appointments, and circumscribing it strictly by the restrictions imposed by the principals, the insurance companies. But the more recent cases support the contrary view, and are in consonance with the doctrines we have attempted to maintain in this opinion."

We conclude, after careful examination, that the weight of authority, English and American, is largely on the side of the opinion just referred to. We therefore do not find any error in the rulings of the Circuit Court in the present case. The judgment, then, must be affirmed ; Judge BAKEWELL concurring. Judge GANTT dissents.