KEET-ROUNTREE DRY GOODS COMPANY, Respondent, v. MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, April 28, 1903.

1. **Insurance, Fire:** SUIT ON POLICIES, WARRANTIES OF POLICIES WAIVER OF. The policy on the stock of merchandise provided "that the assured shall take a complete itemized inventory of the stock covered at least once a year . . . and also shall keep a set of books containing a complete record of business transacted during the life of the policy," and the same "shall keep securely locked in a fireproof safe at night," and in the event of a failure of the assured to so keep, and to produce and deliver to the company, on demand, all such books and inventories, this policy shall be void, and no suit shall be maintained on it for loss. The proof showed that these provisions of the policy were not observed, but neglected: *Held,* that plaintiff was precluded from recovering the value of the stock of goods, but for the value of the storehouse, the judgment with interest will be affirmed.

2. ——: ——: ——: NO WAIVER BY COMPANY. An insurer who made an investigation as to the value of a stock of merchandise destroyed by fire occurring at night did not thereby waive the stipulations of the policy, requiring the assured to keep an inventory in a fireproof safe, nor did the signing of an agreement by the assured and the company's agent to keep matters in *status quo* while the company was making an investigation, waive the conditions of the policy; nor did the statement in a letter by the company to the assignee of the policies that if the settlement of the policies included payment of their gross amount the insurer would decline, waive the stipulation in the policies requiring the assured to safely keep an inventory of the stock, and deliver the same, in case of loss, to the insurer on call.

3. ——: ——: THE REQUIREMENT OF INVENTORY, A CONDITION PRECEDENT. A compliance with the stipulation in a fire policy which required the assured to keep an inventory of the stock of merchandise insured in a fireproof safe, was a condition precedent to the assured's right of recovery on the policy for a loss.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper*, Judge.

.AFFIRMED IN PART AND REVERSED IN PART.

### STATEMENT.

On January 15, 1901, the defendant the Mercantile Town Mutual Insurance Company, a corporation organized under article 11, chapter 119, Revised Statutes 1899, p. 1902, issued to T. H. Wimpey a policy insuring him for the term of one year thereafter, against all loss by fire to an amount not exceeding $1,350, this risk attaching to .and covering $350 on the building, $960 on stock of miscellaneous and assorted merchandise, and $40 on store fixtures, including shoe cases and iron safe; on February 2d, following, defendant issued a second policy to Wimpey, insuring the same stock of merchandise in the sum of $1,350, and in force for a year thereafter. The property insured was situated in the town of Tiff City, McDonald county, Missouri, and about 2 o'clock a. m., of September 8, 1901, the building and contents were totally destroyed by fire. The insured notified the defendant of the loss and received from it blank proofs for statements of loss under the policies, and within two weeks, W. C. West, its representative, arrived at the scene of the conflagration, and before any steps were taken towards examination of the loss the following instrument was executed:

"It is hereby mutually stipulated and agreed by and between T. H. Wimpey, party of the first part, and the Mercantile Town Mutual Insurance Company, party. of the second part, that any action taken by said party of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part, caused by fire alleged to have occurred on the 7th day

of September, 1901, shall not waive or invalidate any of the conditions of the policies of the party of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage in order that the party of the first part may not be delayed unnecessarily in his business and in order that the amount of his claim may be ascertained and determined without regard to the liability of the party of the second part.

"Witness our hands and seals in duplicate this 18th day of September, 1901.

"THOMAS H. WIMPEY.          (L. S.)
"THE MERCANTILE TOWN MUTUAL INSURANCE CO.,
        "By W. C. WEST, Special Agent.    (L. S.)"

West then called for the last inventory, which had been taken about the end of November, 1900, and also for the books of account. Wimpey informed him the inventory had been left in the desk and was burned, but he exhibited his books excepting one termed by Wimpey a day book, which was destroyed in the fire, and excepting also a memorandum book of stock on hand, furniture and fixtures, which he did not submit to West and which showed the stock invoiced $2,760.

West remained several days and, after making investigations of the loss aided by Wimpey, at his departure remarked the company had sixty days in which to make settlement. Subsequently the proofs of loss were completed and mailed by Wimpey to the company. Later, the policies were assigned to plaintiff and its counsel received from defendant the following:

*"Mercantile Town Mutual Insurance Company,*

"Rialto Building, St. Louis, Mo.

"St. Louis, Mo., Dec. 24, 1901.
"Mr. Jno. S. Farrington,
       Springfield, Mo.

"Dear Sir: In reply to your letter of the 19th inst., in which you stated this company's policies No. 10037 and 10364, issued to J. H. Wimpey of Tiff City, Missouri, have been assigned to Keet and Rountree Dry Goods Company, and unless you can get them settled up within a short time it will be necessary to bring suit on them, we beg to say we are not clear as to what you mean by getting the policies settled up with us and if it includes payment by this company of the gross amount of the policies, we must advise that we are compelled to decline to accede to such request.

"We have had numerous inquiries from alleged creditors of Wimpey, or the representatives of creditors, to all of whom we have been compelled to make this same statement. We have had various notices served on us concerning this, some pertaining to suits in bankruptcy, but while we regret circumstances do not permit us to write you concerning this matter, as we have no doubt you would like to have us do, we are compelled to act along the lines of the company's obligations only. Litigation is never desirable to us, although it seems sometimes it is not to be avoided. We shall be very glad to extend any courtesies in this matter that we may, but in the absence of any further requests by you, we know of nothing we may do.

"Very respectfully yours,
       "J. W. DAUGHERTY,
       "Secretary and Manager."

The policies contained the following provisions:

"It is expressly warranted by the assured, first, that the assured shall take a complete itemized inventory of the stock hereby covered at least once a year during the life of this policy, and unless such inventory has been taken within twelve months prior to the date of this policy, the same shall be taken within thirty days after the date of this policy, or this policy shall be null and void from such date.

"Second. The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory provided for in first section of this clause, and during the continuance of this policy.

"Third. The assured shall keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured shall keep such books and inventories in some place not exposed to a fire which should destroy the aforesaid building; and in the event the assured fails to so keep and produce and deliver to this company, on demand, all said books and inventories, this policy shall be null and void, and no suit or action shall be maintained hereon for any loss."

The cause was tried before the court resulting in a finding for plaintiff for $1,336 on the first count, and for $1,304 on the second count, and from judgment thereon defendant appealed.

*Fyke Bros., Snider & Richardson* and *White & Clay* for appellant.

(1) It is not claimed that an inventory, as required by the applications and policies, was produced or could have been, though demanded, and the record shows that such books of account as were kept did not show a complete record of the business transacted, including cash and credit sales, and that such as were kept and preserved were incomplete and useless for the purpose of determining therefrom the amount of the loss. That a part of the books were gone entirely (a cash book covering the latter part of the year 1900). This was a clear violation of the letter and spirit of the condition that the inventory and books should be kept and produced (the iron safe clause) and rendered the policy void. Crigler v. Fire Ins. Co., 49 Mo. App. 11; Gibson v. Town Mutual Ins. Co., 82 Mo. App. 515; Fire Assn. v. Calhoun, 67 S. W. 153; Fire Assn. v. Masterson, 61 S. W. 962; Ins. Co. v. Dudley, 45 S. W. 539. (2) The parties, insurer and insured, had a perfect right in all respects, after the loss to agree upon what terms and with what understanding they would proceed to ascertain the amount of the damage, and the defendant, acting under the protection of the non-waiver agreement, had a perfect right to make such investigation as it saw fit without thereby waiving any of its legal rights, or without thereby relinquishing any of its then existing defenses. Ins. Co. v. Dudley, 45 S. W. 539; Fauriner v. Ins. Co., 49 Atl. 98.

*O. L. Cravens* and *Mann, Sebree & Farrington* for respondent.

(1) The books kept did show a complete record of the business transacted, including cash and credit sales, and although the inventory and the cash account for December, 1900, were burned, yet the conduct of the adjuster in investigating the loss, causing assured to

produce his books and invoices, figuring with him on them for two days to ascertain the amount of the loss, making up a statement or proofs of the loss, which he told assured was a settlement, showing amount of his loss, and having assured sign same, and informing assured that he need not fill out the blank proofs sent by the company, that his (the adjuster's) proofs would be all that was necessary, all after he had been informed by the assured of the fact that the inventory had been burned and shown that the December cash book was missing, constitutes a waiver of the alleged breach of the iron safe clause and strikes that condition out of the policy. At least such facts are all evidence from which the court, sitting as a jury to try the facts, may imply an intention to waive the conditions in said clause of the policy. McCullum v. Ins. Co., 61 Mo. App. 352; Parsons v. Ins. Co., 132 Mo. 584. (2) Waiver is a question of fact that is to be determined by the jury. When the company, knowing the facts which constitute a breach, does that which is inconsistent with the intention to insist upon a strict compliance with the conditions of the contract, it is treated as having waived their performance. Okey v. Ins. Co., 29 Mo. App. 105; Haggard v. Ins. Co., 53 Mo. App. 98; Rokes v. Ins. Co., 51 Md. 512; Ins. Co. v. Schollenberger, 44 Pa. St. 259; Fink v. Ins. Co., 66 Mo. App. 513; McCullough v. Ins. Co., 113 Mo. 606. (3) The provisions of the iron safe clause being solely for the company's benefit, its waiver strikes the conditions out of the contract. The waiver need not be express; it may be inferred from any acts of the company which evidence a recognition of liability, or from its refusal to pay upon other grounds than the breach of the, iron-safe clause. La Force v. Ins. Co., 43 Mo. App. 518. (4) And the jury should determine whether from all the evidence, the declarations and acts of the adjuster were sufficient to constitute a waiver. It matters not that the company may say in express terms

that it waives nothing. Its acts must be looked to to ascertain if there is a waiver. Summers v. Ins. Co., 45 Mo. App. 46; Gale v. Ins. Co., 33 Mo. App. 664; Landrum v. Ins. Co., 68 Mo. App. 339.

REYBURN, J.—1. The chief defense interposed by defendant's answer and relied on to defeat plaintiff's demand was, that no inventory was exhibited, although demand therefor was made, nor did the assured keep a set of books presenting a complete record of the business transacted by him. The assured appears to have had a safe as part of the equipment of his place of business and he candidly acknowledged that although the fire occurred at an hour in the early morning when the building could not have been open for the transaction of business, his books, at least in part, and his inventory were left exposed and consumed in the destruction of his stock of goods and storehouse containing them. Under the view we take and the conclusions arrived at, it will be unnecessary to determine whether those books surviving the fire constituted a substantial compliance with the provisions of the contract governing such books of account, as it might fairly be claimed that from them might be and was ascertained with reasonable certainty the volume of merchandise in stock at the time of its destruction, and thereby shown to be largely in excess of the amount of insurance thereon, but it is conceded that while an inventory was drawn off by the insured during the month of November preceding the loss, and thereby meeting the requirement of the policy respecting its preparation, it was suffered to be so endangered by failure to deposit it in the safe, while the place of business was closed, that it met the fate of the building and other contents.

It is not controverted that at least to the extent of the inventory, there was a breach of the warranties of the policies which avoided and invalidated the contracts

of insurance unless waived by appellant.   Provisions of the character herein sought to be invoked are incorporated in the contract of insurance for the protection of the insuring company and the insurer may waive such conditions for its own benefit and repeatedly renounce further stipulations of non-waiver.   Barnard v. Ins. Co., 38 Mo. App. 113; Thompson v. Ins. Co., 169 Mo. 12; Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90.

The existence of a waiver is a mixed question of law and fact; whether there is any evidence to establish the allegation of a waiver is the province of the court to determine, but the weight or sufficiency of such evidence is a question for the jury; and where there is any evidence from which a waiver of a condition may be inferred, such question should be submitted to the jury. Haggard v. Ins. Co., 53 Mo. App. 98, and cases cited therein; Summers v. Ins. Co., 45 Mo. App. 46; McCollum v. Ins. Co., 61 Mo. App. 352.

But to warrant the submission of such issue, there must be facts in evidence from which the jury may reasonably infer a waiver on the part of the insurer.   The evidence herein fails to disclose any conduct of the defendant from which a waiver of the condition of the policy requiring the safe-keeping and production of an inventory can be fairly drawn.   Under the stipulations of the policies, the assured agreed and warranted that he would not only take an itemized inventory of his stock and keep a complete set of books, but would cause such books and the last inventory to be securely locked in a fireproof safe at night and during non-business hours, or in lieu of so doing would keep such books and inventory in some place not exposed to destruction by a fire burning his store and stock of merchandise, but he obligated himself to protect these commercial records in one manner or the other as he chose.

The facts relied on by plaintiff to constitute a waiver by the defendant are the investigation, if not adjustment of the loss by the defendant, and the letter of its secretary in reply to the notice of assignment of the policies and demand for their settlement given and made by counsel. Under usual conditions an adjustment of loss implies a liability therefor and is a circumstance from which an intention to make payment under a policy may fairly be deduced. But an adjustment is not conclusive proof of liability, and in the present case the inquiry made into the extent of the loss was made upon the distinct reservation or suspension of the question of obligation under the policies. To guard against any claim of waiver by its action after the fire as a condition precedent to the investigation of the loss and a consideration therefor, the so-called non-waiver agreement was entered into by plaintiff's assignor and the agent of defendant, by which it was clearly stipulated and understood that the investigation of the fire or the ascertainment of the extent of the loss should be without prejudice to either party, and that the rights of both were thereby preserved unimpaired and undisturbed. The purpose of this instrument was to fix and counteract beyond misapprehension or dispute, the consequences and effect of the investigation of the fire and its results and to anticipate and exclude the inferences usually to be drawn from such examination if conducted unconditionally and without such mutual agreement. This compact was competent, valid and supported by the consideration of the covenants interchanged and the examination forthwith entered upon by the insurer's agent, which was made under its terms and in reliance upon it. Sun Ins. Co. v. Dudley, 45 S. W. 539.

Vol 100 app—33

Nor does the letter in evidence tend to establish any waiver, for read in the light of the fact that a partial liability was recognized, measured by the amount of the insurance on the building, it is but a declination of payment of the full amount of the insurance under both policies. No element of estoppel can arise because the action of defendant's agents, relied on as constituting a waiver, was after the loss had occurred when the attitude of the assured respecting the cause of forfeiture could not be remedied or disturbed, and he did not in anywise change his condition or relation to the claims or forego any action on his part under the policies to establish or mature them. Gibson v. Ins. Co., 82 Mo. App. 515. The policies of insurance contained the conditions upon which the defendant assumed the obligation of indemnifying the insured against fire loss, to which terms he assented, and the defendant had full right to appeal to the contracts and insist upon the substantial compliance by the assured with their provisions and to take advantage of and enforce all forfeiture incurred by their violation. The guarding of the inventory against the peril of its destruction by fire during non-business hours and its production on call by defendant therefor after a loss, were conditions precedent to right of recovery on the policies. As the defendant acknowledged its liability for the amount of the insurance on the storehouse, the judgment will be affirmed for $350, with interest from date of suit, and reversed as to remainder of the judgment on the first count of the petition and upon the second count. *Bland, P. J.,* and *Goode, J.,* concur.