# CARP, Respondent, v. QUEEN INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, February 13, 1906.

1. **INSURANCE: Appraisement: Forfeiture: Waiver.** Several questions presented and urged for consideration in this case have been fully settled on a former appeal. (Carp v. Queen Insurance Co., 104 Mo. App. 502, 79 S. W. 757.)

2. ———: **Iron-Safe Clause: Inventories and Books.** A clause of insurance policy requiring the insured to keep an iron safe, to make inventories, to keep books showing sales and purchases, is satisfied by substantial compliance and if the insured has so far complied with such provisions that their purposes will not be defeated, his policy will not be forfeited on account of failure to literally comply.

3. ———: ———: ———: **Statutory Provision.** Whether section 7974, Revised Statutes of 1899, providing that warranties of "facts or conditions" which shall not materially affect the risk, shall be deemed as representations only, applies to provisions in relation to keeping books, is not determined.

4. ———: ———: ———: **Conditions Subsequent.** The provisions of an insurance policy under an Iron-safe clause requiring the keeping of books of sales and purchases, are in the nature of conditions subsequent; the insurer may waive them expressly or by implication; breaches of them do not work forfeitures when the insurer does not so elect to make them such.

5. ———: ———: ———: **Waiver.** In an action on a policy of fire insurance, where the evidence showed that the defendant made no demand for the productions of the plaintiff's books, and papers, and on the first trial of the cause presented various other defenses going to the merits of the action, on a second trial, after the cause had been returned from the court of appeals, the defendant was not in position to plead for the first time the failure to comply with a provision of the policy requiring the insured to keep books showing sales and purchases.

Appeal from Stone Circuit Court.—*Hon. Asbury Burkhead,* Judge.

AFFIRMED.

*Edw. J. White* and *Barger & Hicks* for appellant.

The failure of plaintiff to keep and perform the conditions of the iron-safe clause is a bar to any recovery in this action. Gibson v. Ins. Co., 82 Mo. App. 515; Gillum & Co. v. Fire Association of Philadelphia, 106 Mo. App. 625, 80 S. W. Rep. 283; Crigler v. Ins. Co., 49 Mo. App. 11; Keet-Rountree Dry Goods Co. v. Ins. Co., 100 Mo. App. 504, 74 S. W. 469; Ins. Co. v. Dudley, 45 S. W. 539, 28 Ins. Law Jour. 44; St. Landry Wholesale Mercantile Co., Limited v. Ins. Co., 34 Ins. Law Jour. 699; Rives v. Fire Association of Philadelphia, 77 S. W. 424.

*McNatt & McNatt* and *H. H. Bloss* for respondent.

(1) The appellant begins its brief by citing many cases supporting the contention that a failure to comply with the iron-safe clause of the policy is a defense. The cases cited are of no value in Missouri on account of the recent statutes which obtain here and the recent adjudications construing the same. In a few instances our courts have overlooked these statutes and construed such provision as warranties. Siegle v. Ins. Co., 107 Mo. App. 456, 81 S. W. 637. All warranties of any facts or conditions in fire policies issued since 1897, which shall not materially affect the risk insured against shall be deemed as representations only. R. S. 1899, sec. 7973 and 7974. And it is held to be a question of fact under the above statutes for the jury, whether the iron-safe clause of a policy, is a material one to the risk; and its finding that it is not, has the legal effect of striking such provision entirely from the policy. Hanna v. Ins. Company, 109 Mo. App. 152, 82 S. W. 1115; Dolen v. Ins. Co., 88 Mo. App. 666; White v. Ins. Co., 93 Mo. App. 282. Hence under these statutes and the decisions, it must be pleaded and proved by the defendant insurance company, affirmatively, that the iron-safe clause in this instance was a material one to the risk assumed, for as

repeatedly held, statutes of this kind are read into the policy as much so, as though provided for by its terms in language therein contained. Richey v. Ins. Co., 104 Mo. App. 146, 78 S. W. 341; Christian v. Ins. Co., 143 Mo. 460, 45 S. W. 268; Havens v. Ins. Co., 123 Mo. 403, 27 S. W. 718; Summers v. Ins. Co., 90 Mo. App. 691. (2) In giving effect to a similar provision of a policy of insurance where not only the bills of purchase were inadvertently left out of the safe but also the invoice, but they were supplied by duplicates as in this case the bills of purchase were, the court said, that the assured had substantially complied with this provision of the policy. McNutt v. Ins. Co., 45 S. W. 61; 13 Amr. and Eng. Ency. of Law, (2 Ed.), p. 356. (3) This court has placed the construction upon the policy and held that it is not necessary to keep books from the date of the policy, but only from the date of an inventory, which was taken in thirty days after the policy in a case where no inventory had previously been taken. Bayless v. Co., 106 Mo. App. 684, 80 S. W. 289; Forehand v. Ins. Co., 58 Ill. App. 161. (4) The inventory taken in January, 1902, although not quite completed at the time of the fire, together with an itemized list kept in a book of every article sold from the stock, taken with the fact that no goods were purchased after the inventory, certainly enabled the defendant to ascertain the amount of the loss, and in any event was substantial compliance even though the court should hold that an inventory was to be taken within one year after the first inventory. Meyer Bros. v. Ins. Co., 73 Mo. App. 166; Malin v. Ins. Co., 105 Mo. App. 625, 80 S. W. 56; St. Landry Mercantile Co. v. Ins. Co., 37 So. 967; Ins. Co., v. Fitye, 78 S. W. 370; Ins. Co. v. Cumming, 78 S. W. 716; Ins. Co. v. Cummings, 78 S. W. 378.

GOODE, J.—This is an action on an insurance policy written by the defendant on the plaintiff's stock of merchandise. The goods were kept in a two-story brick

building at 117 East Olive street in Aurora, Missouri. A fire which occurred January 29, 1902, destroyed the stock. The petition alleged full compliance by the plaintiff with the terms of the contract and that the defendant had vexatiously refused to pay the amount of the loss. In defense, the answer set up six separate defenses. There was first a general denial of all the statements contained in the petition except those admitted in the answer to be true; and, second, a denial that the plaintiff had complied with the terms and conditions of the policy or had sustained loss or damage on the property insured to the amount of $12,000 as alleged in the petition, or that defendant had vexatiously and unlawfully refused to pay the loss or was indebted to the plaintiff in any sum whatever. In the third paragraph of the answer, defendant pleaded a clause or stipulation of the policy providing that if the insured and the company differed about the amount of the loss, the amount should be ascertained by three appraisers, one appointed by the company, one by the insured, and a third by those two; that the amount of loss or damage was not agreed to between plaintiff and the company but a difference arose between them regarding it; that thereupon the defendant demanded an appraisement, and a written agreement submitting the amount of damage to the appraisers was signed by both parties; that afterwards, each of them selected an appraiser pursuant to the terms of the agreement, but the amount of loss had never been determined by the appraisers thus appointed, and, as by the terms of the policy, no action could be maintained on it until after the ascertainment of the loss by appraisers, the action was prematurely brought. The fourth paragraph of the answer contains the special defense of a breach of the clause of the policy providing that if the insured concealed or misrepresented any material fact concerning the insurance, or the subject thereof, or in case of any fraud or false swearing of the insured touching any matter relating to

the subject of the insurance, whether before or after the loss, the policy should be void.  In this paragraph, it is alleged that the plaintiff, on May 17, 1902, after the fire, made out and delivered to the defendant verified proofs of loss under said policy, in which he falsely stated the value of the goods insured at the time of the fire to be $11,669.36, and the loss or damage to be the same sum; when, in truth, the plaintiff knew the value of said goods was not nearly so great as alleged and that the damage done by said fire did not exceed $1,000.   This defense further stated that plaintiff's purpose in making the false oath and furnishing the false proofs of loss, was to deceive the defendant and induce it to pay him a sum largely in excess of what plaintiff knew his loss had been.  As part of the same defense, it was further averred that plaintiff falsely stated, under oath, that the fire which consumed the property originated from an unknown cause, and that this averment was untrue and made with the intention of defrauding the defendant.  Another part of the defense was that plaintiff had falsely stated, under oath, that at the time of the fire he was the owner of the property consumed, which statement was untrue and made with the intent to cheat and defraud the defendant.  It was averred that by reason of said facts, plaintiff had forfeited whatever claim he might otherwise have had under the policy, which had become null and void and the defendant was not liable in this action.   The fifth defense was that plaintiff, with the intention of fraudulently obtaining from defendant the amount of the policy, set or caused to be set, the fire which burned the insured property; that said fire was caused by the act or connivance of the plaintiff for the purpose of defrauding defendant; wherefore, the policy became and was void.   The foregoing five separate and distinct defenses were pleaded in the original answer and were the issues before the jury on the first trial of the cause; that trial resulted in a verdict for the plaintiff and an appeal was taken to this court;

which reversed the judgment because the lower court had erred in instructing the jury regarding the waiver of the defendant company of compliance by the plaintiff with the clause of the policy requiring an arbitration of the loss before suit could be brought. The cause was remanded for retrial to the circuit court of Lawrence county whence the first appeal was taken. Afterwards, a change of venue was awarded to the circuit court of Stone county. In the latter court the defendant filed an amended answer in which it renewed all the previous defenses, and in addition pleaded a sixth one based on the failure of the plaintiff to comply with what is known as the "Iron-Safe Clause" of the policy, which reads as follows:

*"Iron-Safe Clause.*—The assured under this policy hereby covenants and agrees to take an inventory of the stock hereby covered at least once every twelve months during the life of this policy; and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail, within thirty days thereafter; and to keep a set of books, showing a complete record of business transacted, including all purchases and sales both for cash and credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fireproof safe at night, and at times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the house where such business is carried on; and in case of loss the assured agrees and covenants to produce such books and last inventory, and in event of failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

It is alleged in the answer that the insured had not taken an inventory of his stock of merchandise within one year prior to the acceptance of the policy and that he

did not take one within thirty days thereafter, or at any time afterwards; that prior to the loss, he did not keep a set of books and proper inventory, showing the requisite facts, in a fireproof safe or any other secure place unexposed to a fire which would destroy the building; nor did he produce such books and inventory after the fire for the inspection of the company. Wherefore, the answer avers that the policy had become void before the loss occurred, and all rights thereunder were forfeited prior to the commencement of the present action. There is no averment that the company ever demanded the production of the inventory and books for its inspection, nor is there any proof that it did. On the contrary the evidence tends to show it had no wish and made no request for them. In answer to questions propounded by defendant's counsel for the purpose of eliciting proof that plaintiff and the company had disagreed about the amount of the loss, plaintiff swore repeatedly that there was no one to agree with; thereby indicating that no one representing the company approached him after the fire to adjust the loss. The facts bearing on the point of plaintiff's compliance with the "Iron-Safe Clause," as shown by the testimony for the plaintiff, are these: An ventory of the stock had been taken within twelve months of the issuance of the policy. This inventory was twofold, as we understand, and covered merchandise already owned by the plaintiff and a stock which he had bought and added to it. The evidence goes to show it was a complete inventory of all the merchandise on hand and was made within twelve months previous to September 17, 1901, the day the policy was issued. In January, 1902, just prior to the fire, plaintiff and his employees were engaged in taking another inventory of the stock, which was practically complete when the loss occurred on January 29th; everything having been inventoried except a few suspenders and some jewelry; about fifty dollars worth of goods. This inventory showed the value of the goods on hand to be about $12,000. Neither of the

two inventories was burned, and both were available to the defendant if it wished to use them. Plaintiff kept a cash-book in which every item of merchandise sold was registered at the time of the sale by the clerk who sold it; and, as no goods were sold on credit, this cash-book contained a complete register of the sales. It, too, was saved. The book of purchases kept by the plaintiff consisted of the bills or invoices of merchandise made by the wholesale firms from whom he bought, and which were transmitted to him when his purchases were shipped. Plaintiff owned no safe, but was accustomed to take his inventories and books of sales and invoices to his home every night, to keep them out of danger of any fire which might consume the stock. He had the inventories and the sales book at home on the night of the fire, but had left at the store the book of purchases; that is, the one containing the bills of merchandise bought. It was burned. After the fire, plaintiff procured duplicates of those invoices from the wholesale merchants, for the use of the company, if it desired them, in ascertaining the amount of the loss.

On the issue of plaintiff's compliance with the stipulation regarding inventories and books, the court, at plaintiff's request, instructed the jury that plaintiff was bound to keep such books as would enable a person of ordinary intelligence and accustomed to accounts, to ascertain the amount of stock on hand at any time during the life of the policy, and the business transacted, and that if the jury found he had done so the stipulation was performed. Another instruction declared that although the bills of purchases were left in the store and burned, yet if the jury found that plaintiff had practically completed an invoice in conformity to the policy, and had it on hand, and the burned bills showed the purchases prior to the invoice and that since the invoice, plaintiff had kept a set of books as required, his action could not be defeated for non-compliance with the "Iron-Safe Clause." For defendant, the court instructed on

the issue that if the jury found plaintiff did not keep a set of books showing a complete record of business transacted, including all purchases and sales of merchandise or if he did keep a set of books and they were destroyed by the fire, the verdict should be for defendant. A positive charge for a verdict for defendant on the ground that plaintiff "did not keep a set of books showing a complete record of business transacted, including all purchases and sales," as required by the policy, was asked and refused. Instructions on the other issues were given. In a general one the jury were told that if they found plaintiff was the owner of the property burned, he was entitled to recover, unless he had violated the conditions of the policy and defendant had not, in the manner defined by other instructions, waived its right to bar his recovery because of the violation. As to the defense that the action could not be maintained because there had been no appraisement of the loss, the jury were advised that if they found plaintiff and defendant had both endeavored to prevent an appraisal, or to render abortive the agreement they had signed for one, the arbitration clause of the policy ceased to be a condition precedent to plaintiff's right to sue. For defendant, the court instructed that unless the jury found the failure of the two appraisers appointed by the respective parties to agree on an umpire and return an award, was due to the company's fault, the verdict must be in its favor. An instruction to find for defendant because the amount of the loss had neither been agreed on by the parties nor fixed by appraisal, was refused; as was one that plaintiff could not recover, unless the jury found defendant had agreed with him that the loss need not be appraised, or had done something which induced him as a reasonable man, to believe it need not be. For defendant, the court also instructed that if Harry Carp, the plaintiff, was not the sole and unconditional owner of the insured property at the time of the fire, or if the jury found the fire was caused by the willful act of plaintiff, or with his knowl-

edge, consent or connivance, the verdict must be for defendant.

The jury having found the issues for plaintiff, judgment was rendered on the verdict and the company appealed.

I. We held on the former appeal that whether or not plaintiff had worked a forfeiture of his policy by false swearing or incendiarism, and whether the action was premature because brought before the loss was appraised, were matters for the jury; as was likewise the amount of damage. In other words, we held that all the defenses raised by the original answer, presented issues of fact. We are still of that opinion; and as those issues were left to the jury at the second trial on practically the same facts shown at the first one, and on instructions conforming to our previous opinion, we will not again inquire particularly concerning them.

Though Carp and the company signed an agreement for an appraisal and appointed appraisers, nothing was accomplished towards fixing the amount of damage, because the appraisers would not proceed until an unpire was appointed, and they failed to select one. The two appraisers never met. Everything done under the appraisal agreement is shown by the corespondence between them, which extended over two and one-half months and was but a prolonged bickering about an umpire. We digested this correspondence in our previous opinion and held it was for the jury to say who was to blame for the failure to appraise the damage. A second reading of the letters confirms us in that conclusion. It is tenaciously insisted by defendant's counsel, that instead of the letters affording ground for a finding that the company was to blame, they show conclusively the plaintiff was. It is further urged that the effect of the letters is a court matter. The letters constituted no compact or obligation between the parties, but were evidence tending to prove a fact; and as they would support a finding that neither party was desirous of fixing the loss

by appraisement, or sincere in the agreement to do so, the inference to be drawn from them regarding the facts was a jury matter. The letters do not as defendant's attorneys contend, demonstrate that plaintiff was guileful and defendant guileless. They have produced the belief in our minds that both parties were suspicious and held back from an appraisal; and so we would find were the question for our decision.

We are asked to reverse the case on the evidence tending to show the fire was set by plaintiff or with his connivance. This was very contradictory, and the issue has been twice determined for the plaintiff. In fact, it was stated on the argument, and not denied, that in the different cases growing out of the fire five juries, or sixty men, have exonerated the plaintiff.

We consider that the instructions given on the arson and appraisal issues, afford the defendant no just ground of complaint.

The defendant asserts that it was wrongly denied a continuance. The testimony of the several witnesses said to be absent, was contained in full in the former bill of exceptions and was introduced in that form by the defendant. This testimony covered fully every fact which the application for a continuance said the witnesses would swear to if present. There is no cause for interfering with the lower court's exercise of discretion in this matter.

2. No point raised on this appeal merits attention except the one presented by the sixth defense, which related to plaintiff's supposed failure to take an inventory of his merchandise and keep it and books recording the business transacted, where they would not burn along with the stock. In this connection, the complaint is directed against the submission to the jury of the question of plaintiff's performance of the stipulation, rather than against the instructions as to what constituted performance. It is contended that the evidence shows affirmatively a failure to perform. Such stipulations in differ-

ent insurance policies are much alike, but vary some in their requirements; and in any case where a forfeiture is asserted for an alleged violation of the clause, it is essential to ascertain exactly what duty was imposed on the insured. Cases have been cited in support of the proposition that the plaintiff was required to keep a book showing only those purchases made after the second invoice, not those made before. In the cited cases, the language was that a book of purchases should be kept after the required inventory had been taken. [Forehand v. Ins. Co., 58 Ill. App. 161; Continental Ins. Co. v. Wough, 83 N. W. 81, 60 Neb. 384; Id. v. Cumming et al, 81 S. W. 705, 98 Tex. 115.] The stipulation before us contains no such words and, in our judgment, meant that books should be kept from the issuance of the policy; not, as plaintiff contends, only after the new invoice; nor, as defendant contends, from the old one. Plaintiff was bound to take an inventory every twelve months; and unless one had been taken within a year of the date of the contract, to take one in thirty days. He was also bound to keep books showing a complete record of the business, including sales and purchases, and preserve them and the inventory at night and when the store was not open for business, where they would not be exposed to a fire which would destroy the storehouse. It was further provided that in case of loss, the plaintiff should produce the inventory and books and that in the event of a failure to produce them, the policy should become void and no action should lie on it.

It will be seen from the stated facts, that plaintiff complied literally with the terms of the policy in respect to taking inventories of the stock and keeping complete books of sales and purchases. Thus far he was in no respect remiss. His only fault was that, contrary to his habit, the book of purchases was left in the store on the night of the fire, and perhaps a few nights before. This grew out of his opinion that, as he had taken a second inventory, it was not necessary, in order to comply with

the policy, to preserve his book of purchases; a view taken by the trial court in instructing the jury. That is to say, the plaintiff and the court interpreted the policy to mean that he was to keep a list of his purchases subsequent to the last invoice—an inaccurate interpretation, we think. [Sun Mutual Ins. Co. v. Dudley, 45 S. W. 539, 65 Ark. 240.]

Though the courts continue to talk about affirmative and promissory warranties and the same kinds of representations, no consistent effect is given to these distinctions in laying down rules for the decision of insurance litigation. Likely this has resulted partly from the extreme difficulty of distinguishing, in many instances, between warranties and representations and the different classes of each, and partly from statutory changes in the law. What is important to the sound decision of a cause wherein such a question is involved, is to know how closely it was necessary for the insured to keep the particular clause of the policy which the company asserts he violated, and the effect of a violation on his right to indemnity. The proper technical name and classification of the clauses are often of minor importance; and we think they are in the present instance. In this jurisdiction and in most others, the insured is required to perform substantially a stipulation like the one under advisement. When applied in particular cases, this rule means that though the insured has failed to keep the clause in all respects, yet if he has so far kept it that its purpose will not be defeated, his right to indemnity remains intact. [Malin v. Ins. Co., 105 Mo. App. 625, 80 S. W. 56; Meyer Brothers v. Ins. Co., 73 Mo. App. 166; Burnett v. Ins. Co., 68 Mo. App. 343; Western As. Co. v. Redding, 68 Fed. 708; McNutt v. Virginia, etc., Ins. Co. (Tenn. Ch. App.), 45 S. W. 61.] It was decided in some of those cases that preserving the bills of purchases rendered by wholesale merchants is a compliance with the requirement that the insured keep a book of purchases. [Malin v. Ins. Co., and Burnett v. Id., supra.]

It is obvious that such bills constitute a record of purchases of the most trustworthy kind; for they are made out by third persons having no motive to overvalue the stock in order to increase the indemnity to be paid if a loss occurs. The purpose for which such stipulations as the one in hand are inserted in insurance policies, is to provide for the preservation by the merchant of memoranda which, in the event of a fire, will assist the company to ascertain the extent of the loss and prevent it from being magnified by the insured. It was held by the Tennessee Court of Chancery Appeals, on facts like those before us, that the production of duplicate invoices was a compliance with the policy. [McNutt v. Ins. Co., supra.] In that case the insured on the night of the fire, had left his inventory of stock out of the safe, where he kept it usually, and it was burned; but he procured duplicate invoices. The foregoing authorities would support us in holding that the plaintiff substantially complied with his agreement; and this is all the law required of him to prevent a forfeiture.

If the plaintiff's omission, after the new inventory was taken, to keep the book of purchases away from the storeroom, was a breach of his agreement, and not cured by obtaining duplicate invoices of purchased goods, the question occurs whether that breach in itself worked a forfeiture of the right to indemnity. Our statute providing that a warranty in a fire policy not materially affecting the risk, shall be construed as a representation, is said to control this point. [R. S. 1899, sec. 7974.] To my mind that statute is obscure, when read in the light of the rules of the common law regarding warranties and representations; and in some instances, there is great uncertainty about the propriety of applying it to the particular warranty said to have been broken. A statute similar in many respects has been applied to the "Iron-Safe" clause, and the jury left to say if it materially affected the risk. [Continental Ins. Co. v. Whitaker, 64 L. R. A. 451, 112 Tenn. 151.] Such a stipulation is an un-

dertaking or covenant by the insured to do something, and our statute speaks of warranties regarding "any fact or condition." The language of the statute would need to be liberally construed to make it cover what the insured agrees to do. The records provided for tend to diminish the risk of a fire occurring; for there is less temptation to incendiarism when there is a check on demands for exaggerated indemnities. There is likewise a diminution of risk in that if a fire occurs of innocent origin, the company can more certainly learn the damage done. Does not this matter go to the risk as directly as over-insurance or the institution of foreclosure proceedings, which courts hold affect the risk? [Dolan v. Ins. Co., 88 Mo. App. 666.] .

We put the statute aside for the reason that its application must be doubtful until the Supreme Court construes it, and the defense under consideration fails at common law. Whether the clause in question is a warranty or a representation, it is in the nature of a condition subsequent, like the agreement to furnish proofs of loss; and this the defendant's attorneys concede. Being akin to conditions subsequent, the contract for insurance took effect without regard to whether it was performed, and a breach of it did not necessarily, and of its own force, forfeit plaintiff's right to indemnity. In strict law, conditions subsequent pertain to grants of realty; but there are analogous terms in contracts regarding personality, which are governed by the same rules. A breach of such a condition in a conveyance, does not work a forfeiture of the estate granted unless the grantor so elects. And he may waive the forfeiture expressly or by implication. [6 Am. and Eng. Ency. Law (2 Ed.), p. 508 and cases cited.] The same thing is true of like terms, such as the "Iron-Safe Clause" and the requirements of proofs of loss, in insurance policies. [Bersche v. Ins. Co., 31 Mo. 546; Springfield Laundry Co. v. Id., 151 Mo. 90, 52 S. W. 238; Keet-Rountree Dry Goods Co.

v. Id., 100 Mo. App. 504, 74 S. W. 469; Schmidt v. Id., 2
Mo. App. 339; Raymond v. Id., 86 Mo. App. 391.] At
most plaintiff's non-performance of his agreement about
the inventories and books, afforded cause for forfeiture
if defendant had taken the requisite step of demanding,
after the fire, that those documents be produced and as-
serting a forfeiture when plaintiff failed to produce
them. It might waive the claim if that course was pre-
ferred, and having once done so, its right was gone and
could not be recalled. [Porter v. Ins. Co., 62 Mo. App.
526.] There is no proof that defendant demanded the
inventories and books, or that plaintiff failed to comply
with such a demand. A forfeiture is claimed on the
ground that what he testified to in court showed he had
broken his agreement. But by the words of the stipula-
tion, the policy was to be avoided if plaintiff, in case of
loss, failed to produce the books and inventory. Now it
was shown that not only was no demand for them made,
but that no agent of the company to whom they might
have been tendered came about the plaintiff after the
fire. What was the defendant's attitude and conduct re-
garding the stipulation in question, and was a purpose
exhibited prior to the filing of the last answer, to take
advantage of plaintiff's breach or to waive it as a de-
fense? In making this inquiry, we do not forget that, as
defendant's counsel say, plaintiff pleaded in reply, per-
formance of the stipulation and not an election by de-
fendant to waive this defense. Proof of waiver may be
given in insurance cases under a plea of performance.
This is an invidious rule, but it is the law. [McCullough
v. Ins. Co., 113 Mo. 606, 616.] In the present instance,
at least, it may be applied with justice. If the company
never demands the documents, the condition on which a
forfeiture might be invoked does not happen. And the
very condition must happen for a court to enforce so
harsh a right. [Illinois Fire Ins. Co. v. Stanton, 57 Ill.
354; Forehand v. Ins. Co., 58 Ill. App. 161; McCollum v.
Ins. Co., 61 Mo. App. 352.] The testimony shows that

from the first, defendant claimed the fire was of incendiary origin and started by plaintiff himself or with his complicity; that instead of demanding the production of his books and inventories to ascertain the loss, it demanded an appraisement; and on an issue duly submitted to the jury it has been found that this demand was insincere and not made with the desire to have the loss fixed by an appraisement. Defendant went to trial the first time on an answer charging plaintiff with having committed several perjuries and also arson, alleging that his loss was trifling and did not amount to $1,000, and that he had brought this action prematurely and before compliance with the terms of the policy making an appraisement a condition precedent to the right to sue. The answer said nothing about the present defense; though so far as appears, the facts in regard to it were as well known to defendant then as afterwards. After plaintiff had been forced to overcome all those defenses and there had been a reversal for an error in the instructions, defendant, for the first time, interposed the plea in bar that the "Iron-Safe Clause" had been violated. We do not hesitate to say that this supplemental defense came too late, and after it was obvious that the defendant had elected to ignore it and stand on other defenses. If a motion had been filed to strike that part of the answer out, it would have been right to sustain it. As none was filed, we must look to the evidence and not the pleadings, and the undisputed evidence shows both that the condition of a forfeiture never occurred and that the defendant trusted to other defenses. The amended answer completely shifted the defendant's position and raised a new issue on facts which could have been as well pleaded in the first one and tried at the first trial. We hold that defendant's failure to attempt to adjust the loss, or demand a production of the plaintiff's books and papers, and its subsequent trial of the cause on various other defenses going to the merits of the action, show this subsequent plea is a makeshift, purely technical, without sub-

stantial merit and affording no just cause to forfeit the plaintiff's rights or defeat his action. The judgment is affirmed. *Bland, P. J.,* and *Nortoni, J.,* concur.