## NOLAND v. BUFFALO INS. CO.
### No. 13904.

United States Court of Appeals
Eighth Circuit.

May 2, 1950.

John J. Robison, Marysville, Mo. (Harold L. Miller, St. Louis, Mo., and Waldo P. Goff, St. Joseph, Mo., were with him on the brief), for appellant.

Hale Houts, Kansas City, Mo. (Clarence Strop, Strop & Strop, St. Joseph, Mo., Henry Depping, and Hogsett, Trippe, Depping, Houts & James, Kansas City, Mo., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This litigation has its source in a fire of undetermined origin which on November 11, 1946, destroyed an unoccupied store building and its contents in Winthrop, Missouri, a small town across the Missouri River from Atchison, Kansas. The contents belonged to G. E. Noland, who, from 1937 to July 1, 1946, had conducted a retail package liquor business in the building, which he leased. The Buffalo Insurance Company, of New York, on March 4, 1946, issued to Noland a $6,500 policy of fire insurance upon the contents of the building, $500 of which insurance covered household and personal effects. The policy was in force at the time of the fire. By the terms of the policy, the insurance company was liable for the actual value of the property insured at the time of its loss, not exceeding the face of the policy.

After the fire, Noland furnished proofs of loss, stating the value of the insured

property to be $18,395, and the total amount of fire insurance thereon to be $15,750. The insurance company denied liability. Noland brought an action in a State court of Missouri to recover the face of the policy, alleging the total destruction of the contents of the building by the fire, and asserting the value of the contents to be more than $18,000. The defendant removed the case to the Federal District Court on the grounds of diversity of citizenship and amount in controversy. In its answer the defendant admitted the occurrence of the fire, denied that the value of the insured property was as alleged in the complaint, and set up several additional defenses, including noncompliance by the insured with the record-keeping provisions of the policy, known as the "inventory and iron safe clause." [1]

The issues were tried to the court without a jury. The court determined that the insured had not complied with the "inventory and iron safe clause" of the policy. The court also found that no records or other evidence sufficient to enable the court to determine the amount of the loss had been produced, and that the insured had failed to sustain the burden of establishing the value of the insured property which was destroyed. A judgment of dismissal was entered, from which the insured has appealed.

Noland, in effect, contends that the findings of the court are clearly erroneous, and that, under the evidence and the applicable law of Missouri, he was entitled to judgment. He asserts that the court was clearly mistaken as to the sufficiency of his record-keeping to meet the requirements of the policy, and that it is reasonable to assume that this mistake led to the judgment against him.

It appears that Noland and his wife lived in the store building and personally conducted the business of selling packaged liquor at retail until the latter part of September, 1945. Noland also carried a small stock of groceries, in order to qualify under Missouri law for a license to sell liquor. The grocery business was merely a side line. He also sold soft drinks and tobacco and cigarettes. He was an uneducated man, and his wife kept the books and paid the bills. In the latter part of September 1945, he and his wife took a vacation, leaving the store in charge of an ex-service man named Joe Ryan, who thereafter conducted the business for Noland until July 1, 1946. At that time Noland's license to sell liquor expired and was not renewed. After the insured and his wife returned from their vacation, in the fall of 1945, they did not live in the store, but moved to their farm near Amity, Missouri, about fifty miles from Winthrop. Thereafter they visited the store on Saturdays or Sundays, sometimes once a week and sometimes once every two weeks. Joe Ryan, while he conducted the business for Noland and until about fifteen days before the building burned, lived in the store.

Noland, in the fall of 1945, knew that his lease on the store would not be renewed. He had been notified to vacate the premises on or about May 1, 1946. On November 1, 1946, in an unlawful detainer action brought by the owner of the building against Noland in the Circuit Court of Buchanan County, Missouri, that court determined, by its decree, that Noland had unlawfully detained the premises since

1. "Inventory and Iron Safe Clause.

"(Requirement to keep books and inventory.)

"It is made a condition of this insurance: (1) That the Insured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within thirty (30) days thereafter; (2) that the Insured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit; (3) That the Insured shall keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on; (4) That in case of loss the Insured shall produce such books and last inventory."

April 23, 1946, and ordered restitution of the building and that the owner recover of Noland $300, "double the sum found by the Court for rents and profits from the 23rd day of April, 1946, to the 23rd day of October, 1946, and until restitution be made." Restitution had not been made at the time the fire occurred.

Prior to the closing of the business, there were times when salable straight whiskey was difficult to obtain, and, in order to get it, Noland was forced to buy "tie-in" liquors such as wines, gin, rum, and cordials, which were not readily salable. On July 1, 1946, when his license expired, he had a large amount of these "tie-in" liquors. He testified that he had sometimes bought straight whiskey at over-ceiling prices, to avoid "tie-in" purchases, but not in 1946.

The evidence tending to support Noland's claim as to the value of the contents of the building and the amount of his loss was that of himself and his wife. Mrs. Noland testified that the merchandise and household goods that were in the store on July 1, 1946, were left there; that she and her husband had no other place in which to store them; that, while she and her husband were operating the business, she kept track of cash sales by listing them on a little tab every day, and at the end of the month, when she made up the monthly State sales tax report showing the amount of gross receipts for the month, the tabs were discarded, but that copies of the sales tax reports were kept; that she also had a little book (not produced) in which she recorded purchases of merchandise; that they had two iron safes in the store, one of which was sold after the business was closed in July, 1946, and the other taken to the farm; that thereafter records were kept in the safe at the farm. Mrs. Noland produced in evidence copies of the sales tax reports made to the State of Missouri for each of the months from January 1, 1946, to July 1, 1946. She testified that the reports correctly stated the total amount received from sales in each of those months. She also produced in evidence original invoices purporting to cover all purchases of liquor, beer and other merchandise from January 1, 1946, to July 1, 1946. She testified that

a detailed inventory was taken by her and her husband the first of January of each year; that such an inventory was taken on January 1, 1946; that in it she listed the merchandise; that another inventory was taken by them on July 7, 1946, after the store was closed; that the liquor was inventoried at cost; that the inventories of January 1, 1946, and July 7, 1946, included furniture and fixtures at an estimated value; that in the latter inventory merchandise, exclusive of liquor, pipes, tobacco and cigarettes, was inventoried at $700 based on cost as shown by invoices; and that, at the time the inventories were taken, all of the property listed in them was in the building. The inventories of January 1, 1945, January 1, 1946, and July 7, 1946, were received in evidence.

According to the inventory of January 1, 1945, Noland at that time had a stock of liquor valued at $11,670.31 and a stock of beer valued at $504.53. The inventory of January 1, 1946, showed a liquor stock of $17,717.91, beer $201.75, groceries $800, cigarettes $105.40, and diamonds $600. The inventory of July 7, 1946, showed a liquor stock valued at $16,488.70, and furniture and fixtures of an estimated value of $708.-50. No groceries were included in this inventory. According to the insured's calculation, the invoices of merchandise purchased between January 1 and July 1, 1946, aggregated $5,685.30, and sales from January 1, to July 1, 1946, according to the sales tax reports, totalled $7,370.50.

The testimony of Noland did not differ substantially from that of his wife. He testified that the stock of liquor and the household goods shown in the inventory of July 7, 1946, remained in the building and were there at the time of the fire; that the reason the inventory of July 7, 1946, was taken was that he intended to remove the contents of the building and to store them elsewhere; that the values placed on the liquors in the inventories were cost prices, not including freight; that there had been no break in prices or depreciation in the salable value of the liquor, wines and rums up to the time of the fire, and that they were reasonably worth what they had cost. Noland testified that the liquor

stock was stored in a room in the building and was under lock and key; that some canned fruit belonging to his wife and her mother had been moved up to the farm from the store in empty liquor cases prior to the fire, but that no liquor had been taken from the building by him. He also testified that, after Joe Ryan had left the building, he (Noland) requested a man named Betts to watch it; that Ryan had the key to the storeroom until he left; that thereafter Noland had it; that the last time Noland was in the building was about a week before the fire; that he was in the vicinity of the building the afternoon of the day the store burned, but did not go in, because he had left the key at the farm.

[1] While the insured's system of bookkeeping was imperfect and informal, we think its informality alone was, under the law of Missouri, not a sufficient ground for the forfeiture of his insurance. Malin v. Mercantile Town Mutual Insurance Co., 105 Mo.App. 625, 80 S.W. 56, 60; Carp v. Queen Insurance Co., 116 Mo.App. 528, 92 S.W. 1137, 1141; Cantor v. Insurance Co. of North America, Mo.App., 285 S.W. 803, 805. See and compare, New York Underwriters' Fire Insurance Co. v. Malham & Co., 8 Cir., 25 F.2d 415, 421.

The insured kept and produced an inventory of his merchandise taken on the first day of January, 1946, which, in the language of the "inventory and iron safe clause," was the last inventory taken prior to the date of the policy. This inventory, with the rather insignificant exception of the grocery stock, was itemized and showed the cost of each item. The invoices of merchandise added to the stock after January 1, 1946, showed the items purchased, their cost, and the name of the seller. The sales tax reports showed the aggregate amount received from sales for each month from January 1, 1946, to July 1, 1946. Assuming that all of these records were complete and trustworthy, we think that, under Missouri law, they constituted a sufficient compliance with the record-keeping provisions of the policy to avoid a forfeiture.

It is apparent, however, that the District Court did not regard the records kept by Noland as complete and trustworthy

evidence of the amount of his loss, and was unwilling to accept his estimate of the value of this stock of miscellaneous liquors. The court may even have doubted whether all of these liquors were in the building at the time of the fire. The testimony of Joe Ryan, a witness for the defendant, indicated that the amount of liquors in the building, when he left, about fifteen days before the fire, was much less than Noland had testified was on hand when the fire occurred.

■ The District Court was the trier of the facts, and the judge of the credibility of the witnesses and of the weight of the evidence. The court was not compelled to believe evidence which to it seemed unreasonable or improbable, or to accept as true the uncorroborated evidence (even though uncontradicted) of the insured and his wife, who were interested witnesses. Rasmussen v. Gresly, 8 Cir., 77 F.2d 252, 254; Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 324, 111 A.L.R. 736; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440-444; Hoyt v. Clancey, 8 Cir., 180 F.2d 152, 155.

■ This Court will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. Cleo Syrup Corporation v. Coco-Cola Co., 8 Cir., 139 F.2d 416, 417-418, 150 A.L.R. 1056, and cases cited; Pendergrass v. New York Life Insurance Co., 8 Cir., 181 F.2d 136. Under Rule 52(a) of the Rules of Civil Procedure for the United States District Courts, 28 U.S.C.A., "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A reversal of this case would be virtually equivalent to instructing the trial court to accept as true and reliable, evidence which it evidently did not regard as either credible or convincing.

■ This is not a case in which the plaintiff was entitled to judgment as a matter of law. Had the case been tried to a jury, a verdict for the defendant on the fact issues would have been conclusive. We think the finding of the District Court that the insured had failed to sustain the burden

of proving the amount of his loss is conclusive, whether correct or incorrect. See Cleo Syrup Corporation v. Coca-Cola Co., supra, page 417 of 139 F.2d; Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 695, 69 S.Ct. 1457. Appellate courts should be slow to impute to trial courts a disregard of their duties and responsibilities or a want of diligence or perspicacity in evaluating the credibility of witnesses and the weight of evidence.

The judgment appealed from is affirmed.