## AMERICAN CENTRAL INSURANCE COMPANY v. WARE.

### Opinion delivered May 28, 1898.

1. INSURANCE—KEEPING BOOKS.—A policy of fire insurance stipulated that assured should keep a set of books showing a complete record of business transacted. Assured conducted a cash business, but occasionally small balances not paid were treated as cash, and recorded as such. *Held* that the policy was complied with when such sales were so recorded, thereby showing the amount of depletion of the stock. (Page 339.)

2. SAME.—In a business conducted on a cash basis, small credit sales were occasionally charged in a pocket memorandum book kept by a clerk, from which they would be erased; and the amount entered as a cash sale when paid. *Held* a sufficient compliance with the requirement of a policy of insurance that assured should keep a set of books showing a complete record of business transacted. (Page 340.)

3. SAME—MODE OF KEEPING BOOKS.—Under the provision of an insurance policy requiring assured "to keep a set of books showing a complete record of business transacted," such record should be kept in such a manner that a person of ordinary intelligence, acquainted with book-keeping, could understand it. (Page 341.)

4. SAME—MISREPRESENTATIONS AS TO LOSS.—A policy provided that "any fraud or concealment or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agent in any examination or in the proofs of loss or otherwise, shall cause a forfeiture of all claim under this policy." *Held* that an accidental omission or innocent misrepresentation of fact, on the part of the assured, in the proof of loss will not avoid the policy. (Page 341.)

5. SAME—FAILURE TO PRODUCE BOOKS.—While a wilful refusal by the assured to produce his books of account to the adjuster, as agreed, will avoid the policy, yet if, through inadvertence or oversight, the assured failed to produce one or more books to the adjuster, this would not preclude a recovery where the adjuster had declined to examine further other books which had been produced because he claimed to have discovered fraudulent entries in them. (Page 342.)

Appeal from Benton Circuit Court.

EDWARD S. MCDANIEL, Judge.

### STATEMENT BY THE COURT.

Action upon a policy of insurance against loss by fire upon a stock of goods. The policy was issued on the 8th day of April, 1896, and the goods insured were destroyed by fire on the 7th day of May, 1896.

The policy contained the following provisions:

"IRON SAFE CLAUSE.—The assured under this policy agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and credit (cash sales need not be itemized except by daily totals), and agrees to take an itemized inventory of stock on hand at least once every year, and to keep such books and inventory securely locked at night in a fireproof safe, and at all other times when the store described in this policy is not actually open for business, or in some secure place not exposed to a fire

which may damage or destroy the building where said business is carried on; and, in case of loss, whether at the time of the fire the store be open for business or not, the assured agrees to produce such books and inventories; and, in the event of failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained thereon for any loss or claim.    *    *    *    Any fraud or concealment, or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agent in any examination, or in the proofs of the loss or otherwise, shall cause a forfeiture of all claim under this policy."

The answer set up that the plaintiffs failed to keep a set of books showing a complete record of the business transacted as required by the policy, and, further, that they were guilty of fraud, misrepresentation and false swearing in making out their proof of loss.    The evidence at the trial sufficiently appears in the opinion.    There was a verdict and judgment for plaintiffs for the sum of —— dollars, and defendant appealed.

*Rose, Hemingway & Rose*, for appellant.

The court erred in instructing the jury that, if the books of the insured were kept in such a manner that those who kept them or understood the system of keeping them could tell the state of the business, this was a sufficient compliance with the "iron safe" clause of a fire insurance policy.    Ostrander, Ins. §§ 299, 300, p. 653; 61 Ark. 214.    The court also erred in declaring that a false statement in the proofs of loss, to avoid the policy, must have been knowingly made.    Courts cannot make contracts for the parties.    34 S. W. 464.    Also, the policy was avoided by failure of appellees to keep a complete and true record of their business transactions.    58 Ark. 565, 575; 34 S. W. 462, 464.    The court erred in instructing that failure to produce account books, according to agreement and condition of policy, to avoid the policy, must have been intentional.    58 Ark. 595; 61 Ark. 207; May, Ins. § 156; 34 S. W. 462–5.

*Ira D. Oglesby*, for appellees.

Whether there is a reversible error in an instruction is to be determined by reference to the facts in each particular case.

61 Ark. 212. The books kept by appellee were such that they could easily be understood, and the court did not err in its instruction relative thereto. 58 Ark. 565; 21 S. E. 1006; 58 Ark. 575. The books presented a complete record of the business, and fulfilled the requirements of the policy. 35 S. W. 1060 [reversing 34 S. W. 462]; 68 Fed. 708. If appellee increased, on his books, the cash sales, after the issuing of the policy, this could not prejudice appellant. 15 So. 932.

RIDDICK, J., (after stating the facts.) This is an action against an insurance company to recover the value of a stock of goods destroyed by fire. The main question presented is whether the plaintiffs complied with certain provisions of the policy upon which the action is founded, and by which they were required to keep a set of books showing a complete record of the business transacted, and, in case of loss, to produce such books. After the policy was issued, the plaintiffs conducted their business upon a system of sales for cash, except in case of sales to employees, and except in some instances where the purchaser, not having the exact amount of cash to make payment, desired a short time in which to obtain it. As to the sales to employees, a complete record of such transactions was made, and subsequently carried into the ledger, and no reversal of the judgment is asked for on account of any failure in that respect. The sales for cash were also properly recorded, and there was no failure on the part of plaintiffs to comply with the provisions of the policy in regard to such sales. But the bill of exceptions states that in certain instances "where a small balance, such as 25 or 50 cents, was not paid by the purchaser," the transaction was treated as a cash sale, and a ticket for such small balance was made against the purchaser, and put in the drawer as cash, and the whole amount of the purchase price was entered upon the books as a cash sale, and no further record was made against the purchaser. Those transactions were, as above stated, treated as cash sales; and it is plain, we think, that, so far as the insurance company is concerned, they were properly recorded as cash sales. The plaintiffs, it must be remembered, were not offering to sell on credit, except to their employees, and they kept no open accounts against other persons. They were proposing to sell for cash only, but, as must sometimes happen when business of that kind is

carried on in a small town, a customer would not have the exact change to make payment, and would lack a small balance. Then, when the customer happened to be one with a reputation for honesty, the sale would be made and treated and recorded as a cash transaction, and the amount of the purchase price carried into the total amount of cash sales for that day. Now, it is obvious that the insurance company had no further interest in the matter. It had no interest in the payment of the purchase price, but only in the record of the transaction, and the record, so far as it was concerned, and so far as the policy required, was complete when the price for which the goods sold was placed on the books, so that the company might, should it become necessary, ascertain the extent to which the stock of goods had been depleted by the sale. It is not pretended the plaintiffs were not acting in good faith. The only object in each instance of this kind was to extend a small favor to a customer by giving him a few hours or days to secure the cash to make the payment. They did this by treating the matter as a cash sale, and recording it as such, and by placing a ticket for the balance due against the purchaser in the drawer as so much cash. The record states that these transactions only involved small sums, and whether these tickets were afterwards taken up and paid is a matter of no concern to the insurance company. That was a matter between the merchants and their customers, which did not in any way affect or injure the company, and of which it has no right to complain.

Nor can we concur in the contention that some of the business transacted by the clerk Moffit was not properly recorded. This clerk, at times when a customer purchased an article and lacked a small balance to make payment in full, would, upon the purchaser promising to pay it in a day or two, enter the balance against the purchaser in a small memorandum book, until the purchaser would come in and pay it, when the entry would be erased, and the amount of cash paid placed in the drawer, and counted as a cash sale on that day. The book in which these entries were made was kept most of the time in the clerk's pocket, but contained no entries except those in regard to the business of plaintiffs. The total of these entries did not exceed $30, most of which had been paid before the fire. Now,

these sales were regarded as cash sales; but, the full amount of the price not being paid down, to protect plaintiffs, the entry of the unpaid balance was made against the customer on another book than the cash sales book. When this balance was paid, which was generally in a day or two, it was recorded as a cash sale on that day. The fact that these balances were recorded in a separate book, and only placed upon the books in which the cash sales were recorded when actually paid, is a matter of no moment; for the two books, taken together, constituted a complete record of the business transacted, and that was all plaintiffs undertook to do.

We see nothing in the statement of facts which would justify the supposition that this memorandum book kept by the clerk, Moffit, was not the property of the plaintiffs. It was kept by him as clerk of plaintiffs, and it contained only entries in regard to business of plaintiffs. The fact that it was of small size, and carried most of the time in the clerk's pocket, raises no presumption that it was the private book of the clerk, and the court we think, did not err in refusing to submit to the jury the question as to whether this book was kept by plaintiffs or not, for there was no evidence to the contrary.

We agree with the contention of appellant that, under the provision of the policy requiring appellees "to keep a set of books showing a complete record of business transacted," the record of the business should be kept in such a manner that a person of ordinary intelligence, accustomed to accounts and acquainted with bookkeeping, could understand it. But the jury, under the charge of the circuit judge given in this case, must have found that the books kept by appellees presented a complete record of the business transacted. There was nothing before the jury tending to show that these books were kept in an abstruse, complicated and unintelligible manner, and we do not think that the jury could have been misled by the instruction given on this point.

The proof of loss made out by appellees, and presented to the appellant company, stated the amount of the last inventory to be $4,711.47, when in fact the correct amount of said inventory was $4,450. It also stated that the aggregate amount of goods purchased by appellees after the last inventory to be

$1,634.21, but the evidence showed the amount of such purchases to be $1,732.21. It is contended that these errors in the proof of loss avoided the policy by reason of the following provision contained in the policy, to-wit: "Any fraud or concealment, or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agent in any examination or in the proofs of loss or otherwise, shall cause a forfeiture of all claim under this policy." Now the bill of exceptions states that the evidence tended to show that such discrepancies "were due to a *bona fide* mistake, and were not intentional." The circuit judge instructed the jury that a misrepresentation of that kind did not avoid the policy, unless it was knowingly made, and that if it occurred through oversight or inadvertence, it did not affect any right that plaintiff might have under the policy. This instruction was correct. The provision of the policy above quoted does not refer to an accidental omission or an innocent misrepresentation of fact on the part of the assured. To avoid the policy, the false statement must have been knowingly and wilfully made, thus showing an intention to deceive and to perpetrate a fraud upon the insurer. *Little* v. *Phœnix Insurance Co.*, 123 Mass. 380; *Tulb* v. *Liverpool & London & G. Ins. Co.*, 106 Ala. 651; 2 May, Ins. 477.

The adjuster for the defendant, after the fire, made some examination of the inventory, invoice and books kept by plaintiffs. During the course of this examination, he discovered certain incorrect entries in books kept by plaintiffs prior to the issuance of the policy, and thereupon he abandoned the adjustment, and declined to make further examination. The defendant company now contends that the plaintiffs failed to produce all of their books to the adjuster. The plaintiffs admitted that they failed to produce the memorandum book kept by the clerk, Moffit, but the evidence on their part tended to show that this was the result of inadvertence and wholly unintentional. The evidence of plaintiff tended to show that all the other books were produced to the adjuster, while on the part of defendant there was evidence to show that a book called the blotter was not produced. The court told the jury that it was the duty of the plaintiffs to produce their inventory and books, but that if,

through inadvertence or oversight, the plaintiffs failed to produce one or more of their books to the adjuster, this would not preclude a recovery. We see no error in this instruction.

The plaintiffs by a provision in the policy agreed that they would produce their books and inventories, and if they had failed to produce them, no action could have been maintained on the policy; but they did produce all of their books at the trial, and the only contention here is that there were not produced to the adjuster. The policy does not say that all the books shall be produced the moment they are demanded by the adjuster, or that an accidental omission to produce all of the books when first demanded shall avoid the policy. A wilful refusal without excuse to produce the books to the adjuster would no doubt avoid the policy, but plaintiffs were entitled to a reasonable opportunity to produce their books. In this case the adjuster did not complete the examination of these books presented to him. He discovered, he supposed, evidence of fraud in the entries made by plaintiff, and declined to make further examination. It would have availed nothing to have offered him the books after the declination, for he did not want them, and it would be exceedingly technical and unwarrantable to hold that an accidental omission to produce one or more of the books at the commencement of the examination by the adjuster avoided the policy.

Finding no error, the judgment is affirmed.