HARRY B. AARONSON, RESPONDENT, v. MARYLAND CASUALTY COMPANY, APPELLANT.*

Kansas City Court of Appeals.   March 1, 1926.

---

*Corpus Juris-Cyc. References: Burglary and Theft Insurance, 9CJ, section 8, p. 1098, n. 50; section 14, p. 1099, n. 71; Courts, 15CJ, section 308, p. 920, n. 8; Trial, 38Cyc, p. 1634, n. 13.

*Jacobs & Henderson* for respondent.

*McCune, Caldwell & Downing* for appellant.

BLAND, J.—This is an action on a policy of burglary insurance in the sum of $500. Plaintiff recovered a verdict and judgment in the amount of the policy together with a penalty of $50 and $150 attorney's fees. Defendant has appealed.

The insuring clause of the policy reads as follows:

"$500 to loss of property from within the premises when the assured or at least one employee is on duty."

Under the heading of "Standard Combination Messenger and Interior Robbery Rider Insuring Clauses" appears the following:

"B. For all Loss by Robbery, occurring at any time during the hours beginning at 7 A. M., and ending at 12 midnight of property from within the premises provided the said premises are regularly open for business."

Under the heading "Definitions" appears the following:

"Premises, within the meaning of this policy, is limited to the interior of the assured's office or store, as specified in Statement 5 of the Schedule."

Under the heading "Schedule" appears the following:

"1. The name of the assured is Harry B. Aronson.

"2. The business address of the Assured is S. E. Corner 10th & Garfield, Kansas City, Mo.

"3. The assured's premises are located at S. E. Corner 10th & Garfield, Kansas City, Mo.

"4. The assured's business is Grocery.

"5. The premises are the interior of the assured's store occupying the portion of the building herein specified."

The building in which the plaintiff's grocery store was located was a one-story brick structure without a basement. The outside dimensions of the building were 50 x 28 feet. The interior of the building was divided into two rooms, the front room, or the place where the business of the store was ordinarily transacted, was 28 x 28 feet and the rear room was 28 x 22 feet. The two rooms were separated by a solid wood partition with a door in the center. The front room contained counters, cases, shelves and the main part of the stock of groceries; the rear room was used for a store room where such articles as sugar, cigarettes, beans, canned milk and chicken feed were stored.

While the principal part of the business was conducted in the front room, plaintiff at times sold directly from the goods stored in the rear room and sometimes customers of their own volition went to that part of the store to select purchases. Plaintiff had his office in the rear room of the store and made out his bills and kept his books there. Plaintiff testified that he had been using the back room as a part of his grocery store from the time he first moved into the building.

In addition to the rear room being put to the uses that we have described, it was also used as living quarters for plaintiff and his wife and small child. At the time of the burglary his sister-in-law was visiting plaintiff's family and she, likewise, occupied the rear room. In connection with its use as living quarters, the rear room contained a heating stove, a cook stove, a chifforobe, a duofold bed, another bed, a kitchen cabinet, a dining table, a stand, an icebox and a chair. Both plaintiff and his wife stated that this room was their "home." The rear room had an outside door but this door was kept locked and had heavy sacks of sugar piled against it. The only means of access to it was through the front room, which contained the main entrance to the building. On the morning of January 9, 1923, while the policy was in force, the store was "held up;" $20 was taken from the cash register, which was in the front room, and a sack said to contain over $800 in money and checks was taken from the chifforobe in the back room.

Defendant offered a demurrer to the evidence, which was overruled and thereafter offered an instruction limiting plaintiff's recovery to the sum of $20, which the court refused to give. Defendant stood upon these instructions and offered no testimony.

Defendant insists that the policy covered the robbery from only that part of the grocery store proper, to-wit, the front room. We think there is no question but that the rear room was part of the premises on which plaintiff conducted his business (Nihigian v. Fidelity & Casualty Co., 253 S. W. 83), even though it may have been used in part as living quarters by plaintiff and his family. The fact that one lives in his store does not make it any the less a store or necessarily convert it into a residence. There was nothing in the policy prohibiting the living in the store. We think that the policy covered the rear room where the robbery took place unless there is some peculiar provision of the policy indicating that that part of the premises was not to be covered by it. Section 5 of the schedule stated, "The premises are the interior of the assured's store occupying the portion of the building herein specified." Defendant insists that a "portion" means a part of the whole and that this clause of the policy together with the other parts that we have quoted show that the policy did not cover the whole building but only the front room. Section 5 of the schedule mentions the *building herein specified.* We have carefully read over the policy and do not find that the word "building" appears

therein at any other place than in the clause just quoted. We find that only the word "premises" is used. There is nothing to show whether this part of the policy was in printing. Evidently it was a form intended to be used in writing insurance of this kind which might cover large buildings having a number of tenants, or a building containing more than one business. Defendant insists, conceding that this was a "stock" policy, that we must give some meaning to all of its clauses. No doubt defendant's contention would be correct provided it is possible to give a meaning to all of its provisions. Plaintiff's store or "premises" consisted of the entire interior of the building, we are certain of this. As the store did not occupy a portion of the building but the entire interior of the building we are unable to give clause 5 of the schedule the construction that defendant urges. It does not seem to have any application to the situation. We have examined the cases cited by the defendant and find them not in point. From what we have said the court did not err in refusing to instruct the jury that plaintiff was restricted to a recovery of $20, the amount taken from the cash register in the front room.

The policy provided that "the company shall not be liable for any loss hereunder . . . unless books and accounts are kept by the assured and the loss can be accurately determined therefrom by the company." This clause of the policy was pleaded as a defense and it is now insisted that the uncontradicted evidence shows that plaintiff did not comply with this provision and that defendant's demurrer to the evidence should have been sustained.

After the loss the company conducted an examination of the assured, as it had a right to do under the terms of the policy. In this examination, plaintiff stated that his books and accounts consisted of an unrecording cash register, which he turned back to zero every night; slips upon which a memorandum was made of the money paid out, which were destroyed when the day's business was checked over; bank deposit books showing deposits made prior to the robbery; unpaid invoices for merchandise and pads upon which were kept accounts of customers who charged their purchases. He stated that he did not retain any of the readings of the cash register for the week that the robbery took place; that he did not keep a day-book or enter any readings of the register or his receipts and disbursements in such a book. At the trial he stated that he kept such a book showing such matters. He testified that the cash register showed how much money had been taken in during the day and there was another slip that came out of the register upon which he wrote his expenditures for the day; that he preserved these slips and turned them over to a representative of the company; that he had a check book showing cash withdrawn from the bank; that he kept the other things that he stated he had in his examination by the company. He testified that he had invoices and bills showing accounts payable and bills receiv-

able; that he turned all of his books and papers over to a representative of defendant except the bills payable and that these records had never been returned to him.

Defendant admits that plaintiff's contradictions were a question for the jury, but states to the effect that, taking plaintiff's testimony in its most favorable light to him, he failed to comply with the provision of the policy for the keeping of books and accounts. Plaintiff was not compelled to maintain any special system of bookkeeping, no specified books or accounts were required. This provision must be given a reasonable interpretation. Only a substantial compliance therewith was required. The books and accounts kept—

". . . whether invoices, bills, receipts, inventories, or any other kind of documents, should make possible upon examination by the defendant a definitely intelligible showing of the loss sustained. It was provided that the actual determination be made 'therefrom,' namely, the books and accounts. In other words, the insurance company was not forced to rely on the statements of the plaintiffs or of any other person for the amount of the loss, nor was it forced to rely on their recollection, knowledge, or memory of the stock, but could examine the books and accounts." [Harris v. General Acc. F. & L. Assur. Corp., 187 N. Y. S. 291, 293.]

[9 C. J. 1098.] We think there was evidence that plaintiff kept such books and accounts as to comply with the provision of the policy in question. [See Home Ins. Co. v. Flewellen, 221 S. W. 630; Burnett v. Ins. Co., 63 Mo. App. 343.] They were sufficient to show the approximate loss claimed by plaintiff in this instance.

However, there was a conflict in the evidence as to whether plaintiff kept proper books and accounts. Defendant complains of plaintiff's instruction No. 1 which covered the entire case but wholly ignores this defense. As before stated, there was no instruction offered on the part of the defendant covering this subject. Plaintiff insists that as his instruction covers every essential element necessary for him to recover under the allegations of his petition, it was not error for failing to cover the defensive matter in question. Defendant claims that this contention is correct only when such defensive matter is covered in instructions given on the part of the defendant. The decisions on this question seem to show an apparent conflict of opinion in reference to the matter. However, the latest decision of our Supreme Court holds that in cases of this kind plaintiff may not ignore a similar defense set up in the answer unless defendant submits it. In State ex rel. v. Cox, 270 S. W. 113, 114, the Supreme Court said:

"Where an instruction on behalf of the plaintiff authorizes a verdict on a finding by a jury of all the affirmative facts necessary for recovery, omitting mention of defense pleaded by the defendant, *such instruction is erroneous,* but it is always cured where such matters

of defense are presented in an instruction given on behalf of the defendant. (Italics ours.)

That case involved a gasoline clause in a fire insurance policy. [See, also, State ex rel. v. Trimble, 291 Mo. 227.]

As we are required to follow the latest decision of the Supreme Court, there is nothing left for us to do but to reverse the judgment and remand the cause for a new trial.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.