[1] This is an appeal from a judgment for defendant entered upon the verdict of a jury. The petition alleges that plaintiff is an individual doing business as Pruzan Products Company and is engaged in the business of manufacturing and selling fruit concentrates for the manufacture of soft drinks; that defendant issued to plaintiff its policy of insurance whereby it agreed to insure plaintiff against the loss of money or securities in the amount of $1,000, if such loss was by destruction, disappearance or wrongful abstraction from the plaintiff's premises; that on or about October 18, 1946, while he was in possession of $1,000 of monies and funds belonging to his company, and in the offices of his company at 1826 Grand Avenue in Kansas City, Missouri, persons unknown to plaintiff entered said premises against plaintiff's will and with threats of bodily harm and death to plaintiff, abstracted from plaintiff the sum of $1,000 in cash; that said persons did illegally, wrongfully, feloniously, and against the will of plaintiff abstract said monies of and from the plaintiff and did convert said monies to their own purposes and did deprive plaintiff and plaintiff's company of said funds, and did thereby cause plaintiff's company to sustain a loss.
[2] Plaintiff further alleges that he gave notice to defendant of said loss and did all things necessary or required under and by virtue of the terms of said policy, and did in all respects comply with all of its terms and made demand upon defendant for the payment of the amount of said loss, but that defendant denied liability and refused payment. It is further alleged that defendant's denial of liability and its refusal to pay are vexatious and without reasonable cause. Judgment was, therefore, demanded in the sum of $1000, together with penalty and attorney's fee.
[3] The amended answer of defendant admits the issuance of its policy of insurance effective March 7, 1946 and expiring March 7, 1949, and that the policy was annexed to the petition. As an affirmative defense the defendant charged a breach of the conditions and limitations of the policy with respect to the duty of plaintiff to keep records from which the loss could be determined. The provision of the policy thus relied upon and claimed to have been breached by plaintiff is the following: "The Assured shall keep records in such manner that the Corporation can accurately determine therefrom the amount of loss." The answer further alleged that the defendant requested plaintiff to produce and show records from which said loss could be accurately determined, but that plaintiff failed and refused to produce and exhibit any such records, and in fact advised defendant that he kept no records from which the amount of the loss, if any, could be accurately determined.
[4] In response to an order of court issued upon defendant's motion to require plaintiff to produce all books, papers, records and documents kept by him and in existence on October 18, 1946, from which the loss could be determined, plaintiff presented three documents which during the trial were marked and offered in evidence as Exhibits 1, 2, and 3. Exhibit 1 was a photostatic copy of bank check No. 8144, dated October 7, 1946, payable to cash for $1000 to the City National Bank and Trust Company, signed by the plaintiff. Exhibit 2 was a photostatic copy of bank check stub No. 8144, dated October 7, 1946, payable to cash for $1000. Exhibit 3 was a photostatic copy of a ledger sheet containing an entry on line 12 under date of *Page 10 
October 7, 1946, cash Check No. 8144, credit bank $1000, S. Pruzan $1000. It was stipulated and agreed by the plaintiff that the above described exhibits were "all the books, records, papers and documents which plaintiff has or has ever had from which plaintiff claims the alleged loss referred to in plaintiff's petition can be accurately ascertained." It was further stipulated and agreed by the parties that said exhibits could be introduced in evidence in the trial of the cause without further identification.
[5] G. B. Leverett testified that he was a public accountant and had rendered services to plaintiff for a period of years in keeping books and records which he thought necessary for plaintiff's business; that the source of his information for keeping said books was the following: plaintiff wrote checks and witness determined where to charge them either from information on the check stubs or from discussion with plaintiff; that there were no records kept in connection with the operation of the business except the check stubs and the ledger. The witness then described Exhibits 1, 2, and 3, and stated that all of them showed that plaintiff wrote a check on October 7 for $1000; that the check was cashed on October 7, and the $1000 charged to plaintiff; that the entries on the ledger sheet started with October 1, and the last entry thereon was made on October 12, and there was no entry for October 18; that there wasn't anything showing the amount of money plaintiff had on his person October 18, 1946. On cross-examination, this witness testified that in order to determine accurately how much money plaintiff had on his person on October 18, 1946, or any other date, it would have been necessary for plaintiff to have kept a personal cash book showing daily receipts and disbursements.
[6] Plaintiff testified that he did not keep a personal cash book showing receipts and disbursements; that the only method used to advise the auditor of expenditures in the operation of the business was through check stubs; that plaintiff wrote the check stub October 7, 1946, and had written that it was for sugar, but that word was scratched out after he was held up and the word "cash" was written above it; that he had no other method of keeping company funds in his possession except by the records exhibited in evidence; that he was held up on October 18, 1946, by two or three men; that the robbers took everything he had in his possession; that at that time he had $1000 and other personal funds, such as rents, which were not shown in his business account; that he was the sole owner of Pruzan Products and all income or expenditure was plaintiff's money; that between October 7 and October 18, he spent money out of his pocket and took money in, but he had no record showing how much. Plaintiff further testified that the purpose of drawing the check for $1000, and cashing it on October 7, 1946, was because in the operation of his business he needed to purchase sugar which was scarce and difficult to obtain during that year; that he had to be prepared to pay cash for sugar after receiving notice that a shipment was being made a week or two in advance of delivery to him; that such shipments were expected from Mexico and would come in under a label marked "hard candy"; that the product was handled by a certain firm in Kansas City; that he retained possession of said sum of $1000 awaiting arrival of said shipment of sugar until October 18, at which time he was robbed at his place of business; that thereafter the check stub was changed by crossing out the word "sugar" and writing above it the word "cash."
[7] Plaintiff further offered evidence to show denial of liability on the part of the insurance company and its refusal to pay the loss on the ground that plaintiff had failed to keep records in compliance with the condition and provision of the policy from which the amount of the loss could be determined. Plaintiff rested his case after offering testimony as to the reasonable value of an attorney's fee.
[8] Defendant moved for a directed verdict, which at the time was refused. Defendant then offered the testimony of two witnesses. Mr. Edward Fraser, a certified public accountant, testified that Exhibits 1, 2, and 3, do not show what loss, if any, plaintiff may have sustained on October 18, *Page 11 
1946; that from said records no loss of any kind is shown; that in his opinion, defendant could not determine the amount of plaintiff's loss from said exhibits; that a personal cash book should show approximately plaintiff's cash position from day to day.
[9] Mr. Charles A. Settle testified that he was a claim adjuster for defendant; that he had a conversation with plaintiff in October 1946, regarding the records pertaining to plaintiff's loss; that he told plaintiff the defendant would have to know in some way whether it was business money or personal money he had lost; that plaintiff told him he had no way of telling; that he carried sums of money on his person; that there was no way of distinguishing personal money from business money; that he was at plaintiff's place of business three or four times; that on his first visit plaintiff showed him no records at all; that plaintiff never showed him any books or records; that plaintiff claimed he had $1400 stolen, but did not tell him what he had the money for; that plaintiff said he liked to carry large sums of money because he did not know what he might want to buy; that he bought diamonds; that on his third visit plaintiff told him sugar was very essential and he had to get it, and to draw his own conclusions how he got it; that he asked plaintiff for records and pointed out to him the policy provisions regarding the keeping of records, and plaintiff showed him only the check.
[10] Defendant also offered in evidence certain portions of plaintiff's deposition in the nature of admissions and to the effect that plaintiff could not determine with accuracy from any record what he expended from funds in his pocket for daily incidental operating expenses; that plaintiff had no records to show the amount he had in his possession; that all plaintiff could go by was his memory for part of it and the records for the balance.
[11] At the close of all the evidence the defendant again moved for a directed verdict which was disallowed, and the case was submitted to the jury upon instructions given at the request and on behalf of both plaintiff and defendant. Plaintiff's main instruction prescribed the necessary findings of fact and conditions that would authorize a verdict for the plaintiff. The jury was required to find the issuance of the policy of insurance referred to and that plaintiff had been unlawfully deprived of the sum of $1000. The instruction then proceeds: "And if you further find and believe from the evidence that plaintiff maintained sufficient, complete and adequate records which records, if any, were kept in such manner so as to enable a person of ordinary intelligence to determine with reasonable accuracy the correctness of such books and records so that said defendant could accurately determine therefrom the amount of said loss, if any, with reasonable certainty, sustained as a result of said wrongful abstraction thereof, if you so find, if you further find that plaintiff did thereafter the following said robbery, and as soon as possible notify the public peace authorities and the defendant corporation of said loss, if so, and that plaintiff did, or offered to do, all things necessary or required by the said defendant under the terms of said contract or policy of insurance, if you so find, and that said defendant has failed to pay to plaintiff the amount of $1,000, as provided by the terms of said policy or contract of insurance, and does now refuse to pay same, then you are instructed that your verdict must be in favor of the plaintiff and against the defendant corporation."
[12] Appellant's brief first announces the proposition that if conflicting or ambiguous provisions are contained in an insurance policy, that provision or construction most favorable to the insured should be followed. With such a proposition as a prelude, appellant argues that the condition in the policy contained in Paragraph B, in respect to the keeping of records by assured, places an extremely heavy burden on the insured which should not have been applied in the case at bar. Appellant then points out that Paragraph F, also contained in conditions and limitations in the policy, places a lesser burden on the assured than does the former one in that it requires the assured to produce what records he may have, rather than that his *Page 12 
records be such that the corporation can accurately determine the amount of the loss therefrom.
[13] There is no ambiguity or inconsistency in either paragraph mentioned. Furthermore, under plaintiff's trial theory of the case, as plainly appears from the instruction upon which he sought recovery, he assumed the burden of showing compliance with the provision of the policy which required assured to keep records in such manner that the corporation could accurately determine therefrom the amount of the loss, and this as a condition of recovery. That being the trial theory of plaintiff, the case will not be reviewed here on any other theory. Dutton v. Prudential Insurance Company of America, 238 Mo.App. 1058, 1072,193 S.W.2d 938; Kincaid v. Birt, Mo.Sup., 29 S.W.2d 97; Benz v. Powell, 338 Mo. 1032, 93 S.W.2d 877; Raymond Missouri Instructions, Vol. I, Sec. 205.
[14] In view of the foregoing, it becomes at once apparent that our main problem, the solution of which would dispose of this appeal, is to determine whether plaintiff made out a case upon the theory submitted to the jury. Kansas City v. Rathford, 353 Mo. 1130, 1141, 186 S.W.2d 570. Upon a careful examination and consideration of the entire transcript, we are unable to find any evidence whatever tending to show that plaintiff had substantially complied with the provision of the policy which required him to keep records in such manner that defendant could determine therefrom the amount of the alleged loss. Plaintiff's auditor, as well as the expert account for defendant, testified, in effect that the records were insufficient to determine the amount of money, if any, plaintiff had on the day of the alleged robbery; or what amount, if any, he lost at that time. Provisions in policies of insurance of the kind in question for the keeping of records from which a loss may be determined are recognized as valid and binding provisions which require substantial compliance therewith on the part of the assured. "There must be sufficient written evidence to enable a person of ordinary intelligence familiar with accounts, to determine with accuracy the extent of the liability, without the supplying of essential details from the memory of an interested party." 45 C.J.S., Insurance, § 658, pages 575, 577; Aronson v. Maryland Casualty Co., Mo.App.,280 S.W. 724, 726; Goudie v. National Surety Co., Mo.App., 288 S.W. 369, 372, 373; Handelman v. Fidelity Deposit Co., Mo.App. 291 S.W. 153, 155. We think the conclusion is inescapable that the plaintiff was not entitled to recover on the proof offered according to his theory of the case, and we so rule.
[15] Appellant complains of alleged error in an instruction given on behalf of defendant which required proof of substantial compliance with the provision of the policy in question as a condition precedent to recovery. In view of the conclusion which we have reached that plaintiff was not entitled to recover under the evidence in the case, errors, if any, in defendant's instructions become wholly immaterial and are harmless. Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365.
[16] The result is that the judgment in the case should be affirmed, and the Commissioner so recommends.
[17] SPERRY, C., concurs.