Charles E. MILLER, Fay E. Miller and Boyd A. Miller, Partners, Doing Business as Standard Awning Company, Plaintiffs-Respondents,

v.

AMERICAN BONDING COMPANY OF BALTIMORE, Defendant-Appellant.

No. 46812.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 12, 1959.

Joseph J. Kelly, Jr., Howard F. Sachs, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

Clay C. Rogers, James W. Benjamin, Rogers, Field, Gentry & Jackson, Kansas City, for respondents.

VAN OSDOL, Commissioner.

Plaintiffs, partners, doing business under the firm name of Standard Awning Company with place of business on Prospect Avenue in Kansas City, were issued an insurance policy by defendant American Bonding Company of Baltimore indemnifying plaintiffs against loss through any fraudulent or dishonest act of any of plaintiffs' employees. It was stipulated in the insurance contract (Section 4) that the

"Assured shall keep verifiable records of all property covered by this Policy."

There was evidence tending to show that between Saturday afternoon, January 17th, and Monday morning, January 19th, 1953, while the policy was in force, plaintiffs' place of business was burglarized by entry through a window apparently left unlocked by some one of plaintiffs' employees for the purpose of accommodating the unlawful entry. The lock of the door of the storeroom inside and at or near the southeast corner of the building had been forced. Tools belonging to plaintiffs had been taken from the storeroom and used in effecting a breach through the masonry of the wall of the vault in which cash and other property belonging to plaintiffs were kept within an iron safe. The safe's combination was "knocked off" and the lock "punched" and released. It was readily ascertained from plaintiffs' books and records that two metallic boxes containing petty cash in total amount of $190.81 had been taken from the vault and safe, and defendant in effect admits liability in this amount; but the real issue in this case is plaintiffs' right to recover the amount of $6,100, the property of one of the individual partners, which money was allegedly contained in a legal-size manila envelope and kept in the safe within the vault. The trial court submitted plaintiffs' case to the jury, and a verdict was returned in favor of plaintiffs in the total amount of $8,210, which sum included the stated amount of $6,100 and an award of penalty with attorney's fees for vexatious refusal to pay. Defendant has appealed.

Defendant-appellant assigns error of the trial court in overruling defendant's motion for a verdict directing that plaintiffs have and recover no amount in excess of $190.-81 and costs. It is contended there was no evidence that plaintiffs had complied with the provision (Section 4) of the policy requiring them to keep "verifiable" records of the claimed major item of $6,100 cash belonging to the individual partner and assertedly stolen. Plaintiffs-respondents, on the other hand, contend there was ample

evidence of compliance with all of the provisions of the policy. They say the recorded entries or notations which the evidence tends to show were made on the back of the manila envelope, when their accuracy was later *verified* in the sense of *sworn to*, constituted legal compliance with the language of the Section 4 that assured "shall keep verifiable records" of all property covered by the policy. In view of our conclusions with reference to these conflicting initial contentions, we put aside the further contentions of errors in instructing the jury and in submitting vexatious refusal to pay.

The amount in money, $6,100, which was assertedly enclosed in the envelope in plaintiffs' vault and safe, was not evidenced and could not be substantiated by any record kept by plaintiffs other than the notations of the amounts assertedly put in and taken out of the envelope, of the purpose of the withdrawals, and of balances on noted dates, which notations were written on the envelope itself and which envelope was never recovered after the burglary and theft.

Plaintiffs have cited cases in which it was found that, in the circumstances of the cases, the books and records kept by the respective insureds were in substantial compliance with provisions of the various policies requiring the keeping of records or books. Gueringer v. Fidelity & Deposit Co. of Maryland, Mo.App., 184 S.W. 936; Brookshier v. Chillicothe Town Mut. Fire Ins. Co., 91 Mo.App. 599; Burnett v. American Cent. Ins. Co., 68 Mo.App. 343; Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100; Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, loc. cit. 738. As stated, in these cases the records were considered adequate in the circumstances of the respective cases and, in the cited cases involving burglary policies, the records kept were not by notations on the very container of the property allegedly stolen. The language of the provisions or clauses of the various policies involved in these cases differs somewhat from that of Section 4 in our case, but such provisions, although in somewhat varying language, are generally considered by the courts as having the same intent and purpose, or design and objective.

As we have pointed out, the "records," that is, the "notations," of the amounts put in and taken out of the envelope in our case, were made on the very envelope in which the money was allegedly kept. As we have said plaintiffs had kept books and records from which the loss of the sum of $190.81 in petty cash could be accurately determined; and plaintiffs maintained an accurate and complete set of books of account reflecting their partnership and other business affairs in apparently full compliance with terms of the policy; but it seems clear to us that with regard to the money belonging to the partner, individually, and assertedly kept in the envelope, plaintiffs failed to conform to the terms of the policy.

As we have indicated, the notations on the envelope could not be confirmed or substantiated or checked by any other written record as to the amounts of the money assertedly put into the envelope from time to time or as to the amount of money from time to time withdrawn or as to the balances which remained when amounts were from time to time withdrawn. Obviously, defendant, insurer, in endeavoring to determine with accuracy the extent of its liability, without any further written record kept, could only resort to the memory of interested parties for verbal verification of the balance which remained in the envelope at the time of the burglary and theft.

In Green's Hotel, Inc. v. Commercial Casualty Ins. Co., 4 N.J. 517, 73 A.2d 349, 350, recovery on a policy insuring loss from burglary was denied. Plaintiff corporation was engaged in the hotel business and, while the policy was admittedly in force, burglars broke into the hotel and removed a safe and its contents. Plaintiff claimed that among other items the safe contained, when stolen, $2,600 in currency, the property of plaintiff's officers. The money, property of the officers, was al-

legedly kept in the safe with the money of the hotel guests and employees, and although plaintiff maintained thoroughly adequate records by card files, kept outside of the safe, of the money and other valuables deposited by its guests and employees, it made no similar record of the money in the safe belonging to its officers. As to this money the only record that plaintiff asserted ever existed consisted of notations made on the very envelope in which the money was alleged to have been kept, and neither the money nor the envelope containing it was recovered when the safe was later found, opened and empty. The Green's Hotel case in our opinion is in point and persuasive here, although in that case the provision of the policy was—"The insured shall keep records in such manner that the Company can accurately determine therefrom the amount of the loss."

In Ever Krisp Food Products Co. v. New Amsterdam Cas. Co., 338 Mich. 210, 61 N.W.2d 172, plaintiff insured introduced evidence tending to show an established program of permitting its employees to leave money in plaintiff's safe. Plaintiff's bookkeeper was in immediate charge of these deposits, and it was her custom when an employee brought in money for safekeeping to place it in an envelope bearing the name of the employee, on which envelope she would note the amount deposited at the time and the balance. These transactions were not entered on plaintiff's books. However, at the request or direction of the bookkeeper, each employee making such deposits kept a record, and from time to time the records so kept were checked against the notations on the envelopes. It was in evidence that such a comparison was made on the day preceding the burglary. The insured's policy, as did the policy in the Green's Hotel case, provided that the "insured shall keep records in such manner that the Company can accurately determine therefrom the amount of the loss." It was said the quoted clause of the policy obviously contemplated not merely the keeping of a proper record but one from which the amount of the loss might be determined, and by necessary implication this excluded mere notations on envelopes in which the money was contained; and that such notations were not in and of themselves sufficient to constitute a proper record within the meaning of the policy provision. Plaintiff should have anticipated that if the money was wrongfully abstracted from the safe the envelopes containing it would likewise be taken so that no record would remain. (However, in that case it was held that the records kept by the employees themselves, which were from time to time checked against the notations on the envelopes, were sufficient compliance with the policy provision.) See also Standard Acc. Ins. Co. v. King Candy Co., Tex.Civ.App., 221 S.W.2d 349, in which a provision of a policy required insured to keep records from which insurer could accurately determine the loss. Envelopes containing money belonging to two employees with their names (and possibly the amounts the envelopes contained) written thereon by another employee, which envelopes were kept in insured's lock box, did not constitute the sort of records which the policy required insured to keep with respect to the property covered by the policy.

Plaintiffs argue that the word "verifiable" makes a difference in the meaning of the provision in the instant case from the language of the policies in the Green's Hotel and Ever Krisp cases, supra, and from the language of the provisions in the policies in several other cases cited. Plaintiffs refer to Black's Law Dictionary, 4th Ed., pp. 1732–1733, and to one of its definitions of the word "verify." Plaintiffs urge that, since the term "verify" may be used in the sense of "to confirm or substantiate by oath," consequently, the adjective "verifiable" as used in Section 4 means capable of being substantiated by oath or sworn to, or by other competent proof. At least, say plaintiffs, the word "verifiable" is ambiguous rendering the

534

terms of the policy, particularly Section 4, open to two constructions and Section 4 is to be construed in favor of the insured. We cannot follow this reasoning with respect to Section 4 in the circumstances of this case. We have seen that in Black's Law Dictionary, supra, the word "verify" is also defined—"to check or test the accuracy or exactness of" or "to confirm or establish the authenticity of"; and we have made reference to Webster's New International Dictionary, 2d Ed., p. 2832, in which it is seen that the word "verify" may also be used in the sense—"to check or test the accuracy or exactness of." We think it was rather something like in these last-stated senses that the word "verifiable" was designedly used in the quoted provision, Section 4, involved in the instant case. To give the word "verify," or "verifiable" in Section 4, the meaning intended when we are, for examples, speaking of a "verified pleading," or of proof of a controverted fact in the trial of a cause, would contravene the design which the courts have almost universally ascribed as the intent and purpose of such a provision.

 Provisions, such as we have in the instant case and those substantially similar in fire, burglary and theft insurance, are valid and enforceable and failure to substantially comply with them may preclude recovery. Such provisions should be given fair interpretations and when reasonably possible, the interpretations should favor the insured. But the reasonable interpretations must be consistent with the design of such provisions which is to protect the insurer from fraudulent and excessive claims. The purpose of such provisions or clauses is to protect the insurer from paying losses in excess of those actually sustained, the evident intent being to enable the insurer, by means of accurate records, to ascertain with reasonable certainty the amount of the loss and the extent of liability. In complying with such clauses no particular method or system of bookkeeping or record keeping is required, even the books or records may be informal; but there should be such substantial compliance as to enable the insurer to determine the loss with reasonable certainty. Pruzan v. National Sur. Corp., Mo.App., 223 S.W.2d 8; Goudie v. National Surety Co., Mo. App., 288 S.W. 369; Aronson v. Maryland Casualty Co., 222 Mo.App. 490, 280 S.W. 724; Aetna Casualty & Surety Co. v. Reliable Auto Tire Co., supra, 58 F.2d 100; Noland v. Buffalo Ins. Co., supra, 181 F.2d 735; American Mutual Liability Ins. Co. v. Thomas & Howard Co., 4 Cir., 228 F.2d 550; American Mutual Liability Ins. Co. v. Thomas & Howard Co., 4 Cir., 233 F.2d 215 (in these two cases last cited the policy provisions were substantially as here— "The insured shall keep verifiable records of all property covered by this policy"); 29 Am.Jur., Insurance, § 720, p. 557; 45 C.J.S. Insurance § 658, pp. 574–582; 5 Couch on Insurance, Sections 1032–1032a, pp. 3592–3604.

The judgment should be reversed and the cause remanded with directions to enter judgment for plaintiffs for $190.81 and costs.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.