CENTRAL SURETY & INS. CORP. *v.* JORDAN.

5-2570                                              353 S. W. 2d 536

Opinion delivered February 12, 1962.

*Fulk, Lofton, Wood, Lovett & Parham,* for appellant.

*Switzer & Switzer,* for appellee.

Ed. F. McFaddin, Associate Justice. Appellee, H. L. Jordan (plaintiff below) owns and operates the "Sportsmen's Center" in Crossett and sells guns and other articles for use by those who desire to hunt and fish. In 1960 the appellant, Central Surety and Insurance Corporation (defendant below), issued to Jordan a policy which insured him against loss of merchandise by burglary. While the policy was in force, Jordan's store was burglarized and the stolen items were never recovered. The Insurance Company refused to pay the claim, and Jordan filed this action for $1,370.14, itemizing the stolen articles as follows:

2 Browning 22 calibre automatic rifles—short

2 Browning 22 calibre automatic rifles—long

1 12-gauge Browning automatic 5 32 full choke

1 12-gauge Browning automatic 5 28 full choke

1 light 12-gauge Browning automatic 5 28 full choke

2 Sweet 16-gauge Browning automatics 5 28 full choke

1 16-gauge Browning automatic 5 28 full choke

2 410 gauge Remington automatics 5 shot

1 Model 12 Winchester pump with polychoke

1 12-gauge Remington automatic 5 shot with polychoke—used

1 Colt match target pistol, 22 calibre

1 Ruger standard 22 automatic pistol

of the value of $1,278.70, together with a known amount of small items, such as shells and equipment, amounting to $16.40, and damages to premises of $75.00, making a total of $1,370.14.

The only defense urged by the Insurance Company was the provision in the policy which reads:

"4. Books and Records. The insured shall keep records of all of the insured property in such manner

that the company can accurately determine therefrom the amount of loss.''

Trial to the Circuit Judge without a jury resulted in a judgment for Jordan, and the Insurance Company has appealed, urging this one point: ''The insured failed to maintain records as required by the policy of insurance in such manner that the amount of the loss could be determined.'' The Insurance Company offered no evidence in opposition to that offered by Jordan, but the insistence is that Jordan did not have such a bookkeeping system as would show, in itself, the number of guns and other articles on hand on the day previous to the burglary. The Insurance Company adduced from Jordan:

''Q. Do you have any record whatsoever by which you can tell us how many guns you had on hand on August 9, 1960?

A. No, sir—other than the people that work in there. . . .

Q. You have no record by which the insurance company, or to which the insurance company can go and determine what merchandise you had on hand on August 9, 1960?

A. No, sir.''

From the foregoing and similar statements made by Jordan, the Insurance Company urges that he cannot recover because he failed to perform the condition of the policy as previously quoted, and the appellant cites and relies on such cases as *Sun Mutual Ins. Co.* v. *Dudley,* 65 Ark. 240, 45 S. W. 539; *American Mutual Liability Ins. Co.* v. *Thomas,* 233 F. 2d 215; *Pruzan* v. *National Surety Corp.* (Mo.), 223 S. W. 2d 8; *Calloyan* v. *American Casualty Co.,* 51 Atl. 2d 678; and *Noland* v. *Buffalo Ins. Co.,* 181 F. 2d 735.

In some of the cases and texts cited, the provision was that the insured must establish his loss *from books which would determine what goods were on hand on a particular day.* But that is not the provision in the

policy now under consideration. Here, the provision is that the insured shall keep records in such manner that "the company can accurately determine therefrom *the amount of loss.*" (Emphasis supplied.) This policy did not require the insured to keep a set of books that would disclose the description of each stolen item, but only a set of books which would disclose the "amount of loss." Jordan testified that the stolen guns and pistols had been placed on display only a short time before the burglary; and he was able from the invoices to give the serial number of each stolen gun and pistol and, likewise, the cost to him. As regards the small articles, he was able to determine how many items had been taken and also the cost. The amount of damage to the premises was likewise shown. Mr. Jackson, a public accountant who was familiar with Jordan's books, testified:

"A. He has a single entry set of accounting records—well kept. . . . I made a survey at that time of his operations from an accounting and tax point of view to determine the soundness of his system and he does have a sound system of accounts. That's in keeping with the generally accepted accounting principles for the small retail establishment type business. . . .

Q. Mr. Jackson, could you, taking Mr. Jordan's inventory, his purchases and his sales, and on August 10, 1960, arrive at a loss—the amount of a loss—that occurred the previous night? . . .

A. I believe I could have from the records which he had. . . .

Q. In your opinion, this system used by Mr. Jordan is a practical system for that type of business?

A. Yes, it is practical. He has a periodical inventory basis and that is an acceptable method of accounting. . . ."

The testimony of the accountant was sufficient to bring this case within our holding in *Ark. Central Ins. Co.* v. *Ware,* 65 Ark. 336, 46 S. W. 129, which was

decided in 1898, and before the adoption[1] of Act 85 of 1899. Our holding in *Ark. Central* v. *Ware* is in accord with the holdings in other jurisdictions as regards the provisions in a policy which requires books to be kept from which the insurance company ". . . can accurately determine therefrom the amount of the loss." In 29A Am. Jur. 138, "Insurance" § 944, the holdings are summarized:

"The 'book warranty' clause of an insurance policy does not exact any specific system or form of books to be kept by the insured, nor does it require a system of bookkeeping which will conform to the most scientific standards. The purpose of the clause is accomplished when the insured keeps his books in such a manner as to constitute a record of business transactions which a person who is of ordinary intelligence and is accustomed to accounts can understand, and from which he can ascertain the amounts and value of the merchandise at the time of the loss."

In Couch's Cyclopedia of Insurance Law, Vol. 5, § 1032, the holdings are summarized:

"Since bookkeeping or book warranty clauses ordinarily do not require that any specific system or form of books be kept, the purpose of the clause is accomplished when books are kept in such a manner as to constitute a record of business transactions which a person of ordinary intelligence and accustomed to accounts can understand, and from which he can ascertain the required information as of the time of the loss, . . . Furthermore, a condition for the keeping of books and accounts 'in such a manner that the exact amount of loss may be accurately determined therefrom by the

---

[1] We have been careful to refrain from citing any cases that are based on Act 85 of 1899 (see §66-523 Ark. Stats.) involving "substantial compliance," because by §698 of Act 148 of 1959, the former statute has been reworded so as to limit the "substantial compliance" provision to fire insurance policies only. (See §66-3237 Ark. Stats.) In *National Surety Co.* v. *Fox*, 174 Ark. 827, 296 S.W. 718, we considered a burglary insurance policy and discussed burden of proof and sufficiency of the evidence. Also, there are annotations in 39 A.L.R. 1443, 62 A.L.R. 630, and 125 A.L.R. 350, entitled, "Sufficiency of bookkeeping to satisfy conditions of insurance policy."

company' is sufficiently complied with, where the books and accounts kept are such that, with the assistance of those who kept them or who understand the system, the amount of the loss can be ascertained.''

We conclude that the evidence was sufficient to support the finding and judgment of the Circuit Court.

Affirmed.